IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BAMBULAB USA, INC, | § | |
| SHENZHEN TUOZHU TECHNOLOGY CO., | § | |
| LTD., | § | |
| SHANGHAI LUNKUO TECHNOLOGY CO., | § | Civil Action No. 1:24-cv-01511-RP |
| LTD., | § | |
| BAMBULAB LIMITED, AND | § | |
| TUOZHU TECHNOLOGY LIMITED, | § | JURY TRIAL DEMANDED |
| | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | |
| STRATASYS, INC., | § | |
| | § | |
| Defendant | § | |

## DEFENDANT STRATASYS, INC.'S ANSWER AND COUNTERCLAIMS

Defendant Stratasys, Inc. ("Stratasys"), by its attorneys, hereby answers the Original

Complaint of Plaintiffs BambuLab USA, Inc., Shenzhen Tuozhu Technology Co., Ltd., Shanghai

Lunkuo Technology Co., Ltd., BambuLab Limited, and Tuozhu Technology Limited (collectively

"BambuLab"). Stratasys further asserts its counterclaims. Each of the numbered paragraphs herein

are in response to the corresponding numbered paragraphs in the complaint.

## NATURE OF THE ACTION

1. This is an action for a declaratory judgment of
noninfringement arising under the patent laws of the United States,
Title 35 of the United States Code.

**RESPONSE**: Stratasys admits that this is an action for a declaratory judgment of noninfringement

but denies any alleged noninfringement.

2. Stratasys purports to be the owner of U.S. Patent Nos.
9,168,698 (the "'698 Patent," attached as Exhibit A), 10,556,381
(the "'381 Patent," attached as Exhibit B), 10,569,466 (the "'466
Patent," attached as Exhibit C), 11,167,464 (the "'464 Patent,"

attached as Exhibit D), 8,562,324 (the "'324 Patent," attached as Exhibit E), 8,747,097 (the "'097 Patent," attached as Exhibit F), 9,421,713 (the "'713 Patent," attached as Exhibit G), 7,555,357 (the "'357 Patent," attached as Exhibit H), 9,592,660 (the "'660 Patent," attached as Exhibit I), and 11,886,774 (the "'774 Patent," attached as Exhibit J) (collectively, the "Patents-in-Suit").

**RESPONSE**: Stratasys is the owner of U.S. Patent Nos. 9,168,698 (the "'698 Patent"), 10,556,381 (the "'381 Patent"), 10,569,466 (the "'466 Patent"), 11,167,464 (the "'464 Patent"), 8,562,324 (the "'324 Patent"), 8,747,097 (the "'097 Patent"), 9,421,713 (the "'713 Patent"), 7,555,357 (the "'357 Patent"), 9,592,660 (the "'660 Patent"), and 11,886,774 (the "'774 Patent") (collectively the "Patents-in-Suit"), and thus denies the allegations and characterizations of Paragraph 2 of the Complaint to the extent they limit Stratasys to purporting to be the owner of the Patents-in-Suit.

3.    Plaintiffs do not infringe the Patents-in-Suit.

**RESPONSE**: Paragraph 3 of the Complaint alleges a legal conclusion to which no response is required.  To the extent a response is required, Stratasys denies the remaining allegations and characterizations contained in Paragraph 3 of the Complaint, at least because Plaintiffs infringe each of the Patents-in-Suit.

4.    Stratasys brought two lawsuits against all Plaintiffs, save BambuLab USA, collectively asserting the Patents-in-Suit. Stratasys, Inc. v. Shenzhen Tuozhu Tech. Co. et al., Case No. 2:24-cv-00644 (E.D. Tex.); Stratasys, Inc. v. Shenzhen Tuozhu Tech. Co. et al., Case No. 2:24-cv-00645 (E.D. Tex.).

**RESPONSE**: Stratasys admits that it filed the lawsuits described in Paragraph 4 of the complaint against Shenzhen Tuozhu Technology Co., Ltd., Shanghai Lunkuo Technology Co., Ltd., BambuLab Limited, and Tuozhu Technology Limited (collectively, "EDTX Defendants").

5.    Stratasys omitted the only domestic entity related to the Plaintiffs: BambuLab USA, even though BambuLab USA is responsible for importing and selling the BambuLab line of products in the United States.  No proper venue exists over BambuLab USA

2

in the Eastern District of Texas, but Stratasys elected to file its suit there even though venue would exist over all of the named entities in this District and Stratasys could have brought its suit in this District.

**RESPONSE**: Stratasys admits that BambuLab USA was not a defendant in the lawsuits described in Paragraph 4 of the Complaint. Paragraph 5 further alleges legal conclusions to which no response is required.  To the extent a response is required, Stratasys denies the remaining allegations and characterizations contained in Paragraph 5 of the Complaint.

6.      Stratasys's actions and statements, including its allegations of infringement of the Patents-in-Suit by the Defendants, have created a real and substantial controversy that warrants issuance of a declaratory judgment of noninfringement concerning whether Plaintiffs infringe the Patents-in-Suit.

**RESPONSE**: Stratasys denies that it has made allegations of infringement of the Patents-in-Suit by the Defendants, at least because there is no definition of Defendants in the complaint and because Stratasys is itself the sole defendant in this suit.  Paragraph 6 of the Complaint further alleges legal conclusions to which no response is required.  To the extent a response is required, Stratasys denies the remaining allegations and characterizations contained in Paragraph 6 of the Complaint.

## PARTIES

7.      Plaintiff BambuLab USA is a Texas corporation with a principal place of business at 8000 Centre Park Dr, Austin, Texas 78754.

**RESPONSE**: Stratasys is without knowledge or information sufficient to form a belief as to the truth of the allegations of this Paragraph, and therefore denies them.

8.      Plaintiff Shenzhen Tuozhu Technology Co., Ltd. is a company organized and existing under the laws of the People's Republic of China with its principal place of business located at outside of this country.

**RESPONSE**: Stratasys is without knowledge or information sufficient to form a belief as to the

3

truth of the allegations of this Paragraph, and therefore denies them.

> 9.      Plaintiff Shanghai Lunkuo Technology Co., Ltd. is a company organized and existing under the laws of the People's Republic of China with its principal place of business located at outside of this country.

**RESPONSE**: Stratasys is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this Paragraph, and therefore denies them.

> 10.     Plaintiff Defendant Tuozhu Technology Limited is a company organized and existing under the laws of the Hong Kong SAR, China, with its principal place of business located at outside of this country.

**RESPONSE**: Stratasys denies that Tuozhu Technology Limited is a "Plaintiff Defendant."

Stratasys is without knowledge or information sufficient to form a belief as to the truth of the other

allegations of this Paragraph, and therefore denies them.

> 11.     Plaintiff BambuLab Limited is a company organized and existing under the laws of Hong Kong SAR, China, with its principal place of business located at outside of this country.

**RESPONSE**: Stratasys is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this Paragraph, and therefore denies them.

> 12.     Upon information and belief, Defendant Stratasys, Inc. is a corporation organized under the laws of Delaware with a place of business at 7665 Commerce Way, Eden Prairie, Minnesota.

**RESPONSE**: Stratasys admits that it is incorporated under the laws of Delaware and has a place

of business at 7665 Commerce Way, Eden Prairie, Minnesota.

> 13.     Plaintiffs are technology companies that focus on desktop 3D printers. The BambuLab line of products comprise 3D printers that break the barriers between the digital and physical worlds, bringing creativity to a whole new level.

**RESPONSE**: Stratasys is without knowledge or information sufficient to form a belief as to the

truth of the allegations of this Paragraph, and therefore denies them.

14.     Defendant Stratasys also manufactures 3D printers, but the most common applications for its 3D printers are commercial in nature and not suitable for the desktop market.

**RESPONSE**: Stratasys admits that it manufactures 3D printers.  Stratasys denies any other allegations and characterizations in this paragraph.

15.     Stratasys has alleged that it is the owner by assignment of the Patents-in-Suit.

**RESPONSE**: Stratasys is the owner by assignment of the Patents-in-Suit, and therefore denies the allegations and characterizations of Paragraph 15 of the complaint to the extent they limit Stratasys to alleging itself to be the owner by assignment of the Patents-in-Suit.

## JURISDICTION AND VENUE

16.     This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, and under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq*.

**RESPONSE**: Paragraph 16 states legal conclusions to which no answer is required. To the extent an answer is required, Stratasys admits that this action is a declaratory judgment action that arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02 and that the declaratory judgment claims asserted in the complaint seek declarations regarding infringement of patents pursuant to the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq*. Stratasys denies any remaining allegations and characterizations contained in Paragraph 16 of the Complaint.

17.     This Court has subject matter jurisdiction over the claims alleged in this action because this Court has jurisdiction over declaratory judgment claims arising under the Patent Laws pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

**RESPONSE**: Paragraph 17 states legal conclusions to which no answer is required. To the extent an answer is required, Stratasys admits that this Court has subject matter jurisdiction of the declaratory judgment claims, under 28 U.S.C. §§ 2201 and 2202, that, as asserted in the complaint, seek declarations regarding infringement of patents, which give rise to subject matter jurisdiction

pursuant to 28 U.S.C. §§ 1331 and 1338. Stratasys denies the remaining allegations and characterizations contained in Paragraph 17 of the Complaint.

> 18.    This Court can provide the relief sought in this Declaratory Judgment Complaint because an actual case and controversy exists between the parties within the scope of this Court's jurisdiction pursuant to 28 U.S.C. § 2201, at least because Stratasys accused Plaintiffs' products of infringing claims of the Patents-in-Suit.

**RESPONSE**: Paragraph 18 of the Complaint alleges legal conclusions to which no response is required. To the extent a response is required, Stratasys admits that it has accused the products of the EDTX Defendants of infringing claims of the Patents-in-Suit in the Eastern District of Texas lawsuits described in Paragraph 4 of the complaint. Stratasys denies the remaining allegations and characterizations contained in Paragraph 18 of the complaint.

> 19.    Stratasys has maintained this charge of infringement even though Plaintiffs' products do not infringe, and have not infringed, any claim of the Patents-in-Suit. Stratasys's allegations and actions have created a real, live, immediate, and justiciable case or controversy between Stratasys and Plaintiffs.

**RESPONSE**: Paragraph 19 of the Complaint alleges legal conclusions to which no response is required. To the extent a response is required, Stratasys admits that it has accused the products of the EDTX Defendants of infringing claims of the Patents-in-Suit in the Eastern District of Texas lawsuits described in Paragraph 4 of the complaint. Stratasys denies the remaining allegations and characterizations contained in Paragraph 19 of the Complaint.

> 20.    This Court has personal jurisdiction over Stratasys because Stratasys has a place of business in Texas. Stratasys Direct Manufacturing is located at 815 Kirkley Drive Belton, TX 76513. *See* https://www.stratasys.com/en/contact-us/office-locations/. On information and belief, at this location Stratasys employs individuals, regularly conducts business, and manufactures products for sale. *See* https://www.additivemanufacturing.media/articles/a-tour-of-the-stratasys-belton-production-facility.    Moreover, Stratasys has engaged in enforcement activities in Texas, including attempting to serve Defendants (save BambuLab USA) in Austin,

filing two patent infringement suits collectively alleging infringement of the same ten patents in Texas, and hiring Texas lawyers. Thus, Stratasys has therefore purposely availed itself of the privilege of conducting activities within Texas.

**RESPONSE**: Stratasys admits that Stratasys Direct Manufacturing has a location at 815 Kirkley

Drive Belton, TX 76513. Stratasys denies that it has a place of business in Texas, or employs

individuals, regularly conducts business, and manufactures products for sale at this location.

Stratasys denies that it has attempted to serve Defendants in Austin, at least because there is no

definition of Defendants in the complaint and because Stratasys is itself the sole defendant in this

action.  Stratasys admits that it has filed two patent infringement suits in the Eastern District of

Texas collectively alleging infringement of ten patents but denies that the patents are "the same

ten patents," as Paragraph 20 does not identify which patents those are, making no identifying

reference to the Patents-in-Suit or any specific patents. Stratasys admits that it is represented in

those lawsuits by a law firm that has attorneys in Texas, but Stratasys denies that such an allegation

has any relevance to personal jurisdiction in a declaratory judgment action. Paragraph 20 of the

Complaint further alleges legal conclusions to which no response is required.  To the extent a

response is required, Stratasys denies the remaining allegations and characterizations contained in

Paragraph 20 of the Complaint.

> 21.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Stratasys is subject to personal jurisdiction based on its contacts with this District and therefore resides in this District under § 1391(c)(2). These contacts include specific enforcement efforts, like attempting to serve the Defendants in Austin, Texas and hiring lead Texas counsel whose signature block lists Austin, Texas. Moreover, venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district. For example, in addition to Stratasys's attempts to serve Defendants (save BambuLab USA) in this district, BambuLab USA, which is headquartered in this District, imports and sells the allegedly infringing products in this District.

**RESPONSE**:  Stratasys denies that venue is proper in this District under 28 U.S.C. § 1391(b)(1). Stratasys denies it resides in this District under 28 U.S.C. § 1391(c)(2) at least because § 1391(c)(2) does not apply to the residency of corporations in states with multiple districts, like Texas. Paragraph 21 of the Complaint further alleges legal conclusions to which no response is required.  Stratasys denies that it has contacts that include specific enforcement efforts with this District.  Stratasys denies that it has attempted to serve Defendants in Austin, Texas, at least because there is no definition of Defendants in the complaint and because Stratasys is itself the sole Defendant in this action.  Stratasys admits that it is represented in its lawsuits before the Eastern District of Texas by a law firm that has attorneys in Texas, including lead counsel whose signature block lists Austin, Texas, but Stratasys denies that such an allegation has any relevance to the venue in a declaratory judgment action. Stratasys denies that venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise the claims in this suit did not occur in this District. Stratasys lacks information sufficient to form a belief as to the truth regarding BambuLab USA's headquarters' location or actions in this District, and therefore denies them.  Stratasys denies that it has engaged in specific enforcement efforts. Paragraph 21 of the Complaint further alleges legal conclusions to which no response is required.  To the extent a response is required, Stratasys denies the remaining allegations and characterizations contained in Paragraph 21 of the Complaint.

### COUNT I – DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 9,168,698

22.    The facts and allegations of paragraphs 1–21 are incorporated by reference as though fully set forth herein.

**RESPONSE**: Stratasys repeats its responses to Paragraphs 1–21 above, which are explicitly incorporated by reference.

23.    Plaintiffs do not infringe, induce others to infringe, or contribute to any infringement by others of any claim of the '698 Patent.

**RESPONSE**: Denied.

24.    Plaintiffs do not infringe independent claim 1 of the '698 Patent or any of its dependent claims at least because the accused BambuLab products do not practice any method that comprises "creating a control signal to control at least one component of the three-dimensional printer in response to the current contact force while depositing material during the build."

**RESPONSE**: Denied

25.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '698 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

**RESPONSE**: Stratasys admits that Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '698 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement). Stratasys denies any characterization that such a declaration would be lawful pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, at least because Plaintiffs have infringed and do infringe the claims of the '698 Patent.  Stratasys further denies any other allegations and characterizations contained in Paragraph 25 of the complaint.

## <u>COUNT II – DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 10,556,381</u>

26.    The facts and allegations of paragraphs 1–25 are incorporated by reference as though fully set forth herein.

**RESPONSE**: Stratasys repeats its responses to Paragraphs 1–25 above, which are explicitly incorporated by reference.

27.    Plaintiffs do not infringe, induce others to infringe, or

contribute to any infringement by others of any claim of the '381 Patent.

**RESPONSE**: Denied.

28. Plaintiffs do not infringe independent claim 1 of the '381 Patent or any of its dependent claims at least because the accused BambuLab products do not comprise "a controller configured to receive a signal from the one or more sensors on the extruder and to calculate the contact force between the extruder and the separate structure."

**RESPONSE**: Denied

29. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '381 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

**RESPONSE**: Stratasys admits that Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '381 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement). Stratasys denies any characterization that such a declaration would be lawful pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., at least because Plaintiffs have infringed and do infringe the claims of the '381 Patent. Stratasys further denies any other allegations and characterizations contained in Paragraph 29 of the complaint.

## COUNT III – DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 10,569,466

30. The facts and allegations of paragraphs 1–29 are incorporated by reference as though fully set forth herein.

**RESPONSE**: Stratasys repeats its responses to Paragraphs 1–29 above, which are explicitly incorporated by reference.

31. Plaintiffs do not infringe, induce others to infringe, or contribute to any infringement by others of any claim of the '466

Patent.

**RESPONSE**: Denied.

> 32.    Plaintiffs do not infringe independent claim 1 of the '466 Patent or any of its dependent claims at least because the accused BambuLab products do not practice any method comprising "providing a three-dimensional printer that includes a tag sensor," and/or "receiving a request from a client over a network to fabricate an object on the three-dimensional printer, the three-dimensional printer coupled to a supply of a build material including a tag that stores at least one property of the build material" and "receiving one or more operational parameters from the client selected for use in controlling operation of the three-dimensional printer when fabricating the object with the build material having the at least one property stored in the tag."

**RESPONSE**: Denied.

> 33.    Plaintiffs do not infringe independent claim 19 of the '466 Patent or any of its dependent claims at least because the accused BambuLab products do not practice any method comprising "providing a three-dimensional printer that includes a controller and a tag sensor."

**RESPONSE**: Denied.

> 34.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '466 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

**RESPONSE**: Stratasys admits that Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '466 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement). Stratasys denies any characterization that such a declaration would be lawful pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, at least because Plaintiffs have infringed and do infringe the claims of the '466 Patent.  Stratasys further denies any other allegations and characterizations contained in Paragraph 34 of the complaint.

11

## COUNT IV – DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 11,167,464

35.    The facts and allegations of paragraphs 1–34 are incorporated by reference as though fully set forth herein.

**RESPONSE**: Stratasys repeats its responses to Paragraphs 1–34 above, which are explicitly incorporated by reference.

36.    Plaintiffs do not infringe, induce others to infringe, or contribute to any infringement by others of any claim of the '464 Patent.

**RESPONSE**: Denied.

37.    Plaintiffs do not infringe independent claim 1 of the '464 Patent or any of its dependent claims at least because the accused BambuLab products do not practice any method comprising "performing a diagnostic test to determine whether the operational parameter is suitable for the three-dimensional printer" and/or "when the operational parameter is suitable for the three-dimensional printer according to the diagnostic test, controlling operation of the three-dimensional printer during the fabrication process with the controller according to the operational parameter to fabricate an object with the three-dimensional printer."

**RESPONSE**: Denied.

38.    Plaintiffs do not infringe independent claim 12 of the '464 Patent or any of its dependent claims at least because the accused BambuLab products do not comprise "a processor configured to determine an operational parameter of a fabrication process using the three-dimensional printer based upon the data and to perform a diagnostic test to determine whether the 7 operational parameter is suitable for the three-dimensional printer, the operational parameter including at least one of a build platform temperature, a build volume temperature, an infill requirement, a rafting requirement, a support structure requirement, and a cooling requirement" and/or "a controller for the three-dimensional printer, the controller configured to, when the operational parameter is suitable for the three-dimensional printer according to the diagnostic test, control operation of the three-dimensional printer during the fabrication process according to the operational parameter to fabricate an object with the three-dimensional printer."

**RESPONSE**: Denied.

39.     Plaintiffs do not infringe independent claim 19 of the '464 Patent or any of its dependent claims at least because the accused BambuLab products do not practice any method comprising "performing a diagnostic test to determine whether the operational parameter is suitable for the three-dimensional printer" and/or "when the operational parameter is suitable for the three-dimensional printer according to the diagnostic test, controlling operation of the three-dimensional printer during the fabrication process according to the operational parameter to fabricate an object with the three-dimensional printer."

**RESPONSE**: Denied.

40.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '464 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

**RESPONSE**: Stratasys admits that Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '464 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement). Stratasys denies any characterization that such a declaration would be lawful pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, at least because Plaintiffs have infringed and do infringe the claims of the '464 Patent. Stratasys further denies any other allegations and characterizations contained in Paragraph 40 of the complaint.

## COUNT V – DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 8,562,324

41.     The facts and allegations of paragraphs 1–40 are incorporated by reference as though fully set forth herein.

**RESPONSE**: Stratasys repeats its responses to Paragraphs 1–40 above, which are explicitly incorporated by reference.

42.     Plaintiffs do not infringe, induce others to infringe, or contribute to any infringement by others of any claim of the '324 Patent.

13

**RESPONSE**: Denied.

43.    Plaintiffs do not infringe independent claim 1 of the '324 Patent or any of its dependent claims at least because the accused BambuLab products do not comprise "a processor configured to receive a three-dimensional model through the network interface," and/or "the processor further configured to provide a user interface to a remote user accessing the device through the network interface. . . a two-dimensional projection of the three-dimensional model from the point of view of the video camera."

**RESPONSE**: Denied.

44.    Plaintiffs do not infringe independent claim 19 of the '324 Patent or any of its dependent claims at least because the accused BambuLab products do not practice any method that comprises "receiving a three-dimensional model through the network interface" and/or "providing a user interface to a remote user device accessing the device through the network interface. . . a two-dimensional projection of the three-dimensional model from the point of view of the video camera."

**RESPONSE**: Denied.

45.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '324 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

**RESPONSE**: Stratasys admits that Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '324 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement). Stratasys denies any characterization that such a declaration would be lawful pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, at least because Plaintiffs have infringed and do infringe the claims of the '324 Patent. Stratasys further denies any other allegations and characterizations contained in Paragraph 45 of the complaint.

## COUNT VI – DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 8,747,097

46.     The facts and allegations of paragraphs 1–45 are incorporated by reference as though fully set forth herein.

**RESPONSE**: Stratasys repeats its responses to Paragraphs 1–45 above, which are explicitly incorporated by reference.

47.     Plaintiffs do not infringe, induce others to infringe, or contribute to any infringement by others of any claim of the '097 Patent.

**RESPONSE**: Denied.

48.     Plaintiffs do not infringe independent claim 1 of the '097 Patent or any of its dependent claims at least because the accused BambuLab products do not comprise "a web server 9 configured to transmit the status of the print job for display at a remote client through the network interface."

**RESPONSE**: Denied.

49.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '097 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

**RESPONSE**: Stratasys admits that Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '097 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).  Stratasys denies any characterization that such a declaration would be lawful pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, at least because Plaintiffs have infringed and do infringe the claims of the '097 Patent.  Stratasys further denies any other allegations and characterizations contained in Paragraph 49 of the complaint.

## COUNT VII – DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 9,421,713

50.     The facts and allegations of paragraphs 1–49 are incorporated by reference as though fully set forth herein.

**RESPONSE**: Stratasys repeats its responses to Paragraphs 1–49 above, which are explicitly incorporated by reference.

51.     Plaintiffs do not infringe, induce others to infringe, or contribute to any infringement by others of any claim of the '713 Patent.

**RESPONSE**: Denied.

52.     Plaintiffs do not infringe independent claim 1 of the '713 Patent or any of its dependent claims at least because the accused BambuLab products do not use a method comprising "printing layers of the three-dimensional part and of a support structure…from multiple print heads or deposition lines," "switching the print heads or deposition line between stand-by modes and operating modes in-between the printing of the layers," and/or "performing a purge operation for each print head or deposition line switched to the operating mode…wherein the layers of the at least one purge tower are printed from the print head or deposition line switched to the operating mode."

**RESPONSE**: Denied.

53.     Plaintiffs do not infringe independent claim 10 of the '713 Patent or any of its dependent claims at least because the accused BambuLab products do not use a method comprising "bringing a first print head or deposition line from a stand-by mode to an operating mode," "printing a first layer of a purge tower … from a support material using the first print head or deposition line in operating mode," "printing a layer of a support structure from the support material using the first print head in the operating mode," "bringing a second print head or deposition line from a stand-by mode to an operating mode," "printing a second layer of the purge tower from a part material using the second print head or deposition line in the operating mode," and/or "printing a layer of the three-dimensional part from the part material using the second print head in operating mode."  Additionally, Plaintiffs do not infringe independent claim 10 of the '713 Patent or any of its dependent claims because the accused BambuLab products do not use a method comprising the sequence recited in claim 10.

16

**RESPONSE**: Denied.

> 54.    Plaintiffs do not infringe independent claim 16 of the '713 Patent or any of its dependent claims at least because the accused BambuLab products do not use a method comprising "(c) printing a first layer of the three-dimensional part on at least a portion of the first layer of the support structure from the part material after printing the first layer of the purge tower;" "(d) printing a second layer of the purge tower from the support material" and/or " (e) printing a second layer of the support structure on at least a portion of the first layer of the three-dimensional part from the support material after printing the second layer of the purge tower" as required by claim 16.    Additionally, Plaintiffs do not infringe independent claim 16 of the '713 Patent or any of its dependent claims because the accused BambuLab products do not use a method comprising the sequence recited in claim 16.

**RESPONSE**: Denied.

> 55.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Plaintiffs requests a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '713 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

**RESPONSE**: Stratasys admits that Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '713 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).  Stratasys denies any characterization that such a declaration would be lawful pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, at least because Plaintiffs have infringed and do infringe the claims of the '713 Patent.  Stratasys further denies any other allegations and characterizations contained in Paragraph 55 of the complaint.

## COUNT VIII – DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 7,555,357

> 56.    The facts and allegations of paragraphs 1–55 are incorporated by reference as though fully set forth herein.

**RESPONSE**: Stratasys repeats its responses to Paragraphs 1–55 above, which are explicitly

incorporated by reference.

> 57.    Plaintiffs do not infringe, induce others to infringe, or contribute to any infringement by others of any claim of the '357 Patent.

**RESPONSE**: Denied.

> 58.    Plaintiffs do not infringe independent claim 1 of the '357 Patent or any of its dependent claims at least because the accused BambuLab products do not practice any method that comprises "generating at least one intermediate path in the void region," "determining dimensions of the void region based at least in part on the at least one generated intermediate path," and/or "generating a remnant path in the void region based at least in part on the at least one intermediate path."

**RESPONSE**: Denied.

> 59.    Plaintiffs do not infringe independent claim 8 of the '357 Patent or any of its dependent claims at least because the accused BambuLab products do not practice any method that comprises "generating a build path for building a layer of the three-dimensional object, the build path being based on a first road width resolution," "identifying a void region in the build path," "determining dimensions of the void region," and/or "generating a remnant path in the void region."

**RESPONSE**: Denied.

> 60.    Plaintiffs do not infringe independent claim 15 of the '357 Patent or any of its dependent claims at least because the accused BambuLab products do not practice any method that comprises "generating a build path for building a layer of the three-dimensional object with a plurality of first deposition roads based on a first road width resolution, wherein the build path defines a void region having dimensions that are smaller than the first road width resolution along at least one axis," and/or "generating a remnant path in the void region for filling at least pan of a cavity corresponding to the defined void region with a second deposition road based on deposition rates that are configured to vary based on the dimensions of the void region."

**RESPONSE**: Denied.

> 61.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Plaintiffs request a declaration by the Court that

Plaintiffs have not infringed and do not infringe any claim of the '357 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).

**RESPONSE**: Stratasys admits that Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '357 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement). Stratasys denies any characterization that such a declaration would be lawful pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, at least because Plaintiffs have infringed and do infringe the claims of the '357 Patent. Stratasys further denies any other allegations and characterizations contained in Paragraph 61 of the complaint.

## COUNT IX – DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 9,592,660

62.    The facts and allegations of paragraphs 1–61 are incorporated by reference as though fully set forth herein.

**RESPONSE**: Stratasys repeats its responses to Paragraphs 1–61 above, which are explicitly incorporated by reference.

63.    Plaintiffs do not infringe, induce others to infringe, or contribute to any infringement by others of any claim of the '660 Patent.

**RESPONSE**: Denied.

64.    Plaintiffs do not infringe independent claim 1 of the '660 Patent or any of its dependent claims at least because the accused BambuLab products do not comprise "a build platform with a temperature control unit configured to control heating of the build platform."

**RESPONSE**: Denied.

65.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '660 Patent under any theory, including directly (whether

individually or jointly) or indirectly (whether contributorily or by inducement).

**RESPONSE**: Stratasys admits that Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '660 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement).  Stratasys denies any characterization that such a declaration would be lawful pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, at least because Plaintiffs have infringed and do infringe the claims of the '660 Patent.  Stratasys further denies any other allegations and characterizations contained in Paragraph 65 of the complaint.

## COUNT X – DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 11,886,774

66.    The facts and allegations of paragraphs 1–65 are incorporated by reference as though fully set forth herein.

**RESPONSE**: Stratasys repeats its responses to Paragraphs 1–65 above, which are explicitly incorporated by reference.

67.    Plaintiffs do not infringe, induce others to infringe, or contribute to any infringement by others of any claim of the '774 Patent.

**RESPONSE**: Denied.

68.    Plaintiffs do not infringe independent claim 1 of the '774 Patent or any of its dependent claims at least because the accused BambuLab products do not practice any method comprising "querying the target printer for configuration information of the target printer relevant to creation of a printable model for fabrication of the object on the target printer" and/or "creating a fabrication profile based on the one or more properties."

**RESPONSE**: Denied.

69.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '774 Patent under any theory, including directly (whether

individually or jointly) or indirectly (whether contributorily or by inducement).

**RESPONSE**: Stratasys admits that Plaintiffs request a declaration by the Court that Plaintiffs have not infringed and do not infringe any claim of the '774 Patent under any theory, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement). Stratasys denies any characterization that such a declaration would be lawful pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, at least because Plaintiffs have infringed and do infringe the claims of the '774 Patent. Stratasys further denies any other allegations and characterizations contained in Paragraph 69 of the complaint.

## RESPONSE TO PLAINTIFFS' PRAYER FOR RELIEF

To the extent a response is necessary, Stratasys denies that Plaintiffs are entitled to any relief whatsoever, whether as sought in the Prayer for Relief of its Complaint or otherwise, in connection with this civil action. To the extent that Plaintiffs' Prayer for Relief may be deemed to allege any facts, Stratasys denies Plaintiffs' allegations and characterizations.

## GENERAL DENIAL

Stratasys denies each and every factual allegation contained in the Complaint that is not expressly admitted in the preceding paragraphs of this Answer.

## STRATASYS'S SPECIFIC DENIALS / AFFIRMATIVE AND OTHER DEFENSES

By asserting the following Specific Denials and/or Affirmative Defenses, the burden of proof has not shifted away from Plaintiffs for any issue on which Plaintiffs bears the burden, including without limitation noninfringement. Stratasys expressly reserve the right to assert any other legal or equitable defenses to which it is shown to be entitled. Stratasys for its Specific Denials and/or Affirmative Defenses to the Complaint of Plaintiffs states the following:

## FIRST SPECIFIC DENIAL / DEFENSE: FAILURE TO STATE A CLAIM

Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

## SECOND SPECIFIC DENIAL / DEFENSE: GOOD FAITH

Stratasys has engaged in all relevant activities in good faith, thereby precluding Plaintiffs, even if they prevail, from recovering even reasonable attorneys' fees under 35 U.S.C. § 285, yet alone the unrestrained costs and attorneys' fees requested.

## STRATASYS' COUNTERCLAIMS

Defendant and Counter-Plaintiff Stratasys, Inc. ("Stratasys") counterclaims against Plaintiffs and Counter-Defendants BambuLab USA, Inc., Shenzhen Tuozhu Technology Co., Ltd., Shanghai Lunkuo Technology Co., Ltd., BambuLab Limited, and Tuozhu Technology Limited (collectively "BambuLab") for patent infringement and would respectfully show the Court as follows:

## NATURE OF THE ACTION

1.     This is an action for a declaratory judgment that arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

2.     This action includes BambuLab's declaratory judgment claims, as asserted in the complaint, that seek declarations regarding infringement of patents pursuant to the Patent Laws of the United States, Title 35 of the United States Code, involving U.S. Patent Nos. 9,168,698 (the "'698 Patent"), 10,556,381 (the "'381 Patent"), 10,569,466 (the "'466 Patent"), 11,167,464 (the "'464 Patent"), 8,562,324 (the "'324 Patent"), 8,747,097 (the "'097 Patent"), 9,421,713 (the "'713 Patent"), 7,555,357 (the "'357 Patent"), 9,592,660 (the "'660 Patent"), and 11,886,774 (the "'774 Patent") (collectively the "Patents-in-Suit"). Further, Stratasys asserts patent infringement counterclaims for the Patents-in-Suit as set forth below.

## PARTIES

3.      Stratasys is one of the pioneers in the field of three-dimensional (3D) printing technology, founded in 1988.  Counter-Plaintiff Stratasys, Inc. is a Delaware corporation with its place of business located at 7665 Commerce Way, Eden Prairie, Minnesota, and the owner of the Patents-in-Suit.

4.      On information and belief, Counter-Defendant BambuLab USA is a Texas corporation with a principal place of business at 8000 Centre Park Dr, Austin, Texas 78754.

5.      On information and belief, Counter-Defendant Shenzhen Tuozhu Technology Co., Ltd. (深圳拓竹科技有限公司, hereafter, "Shenzhen Tuozhu") is a company organized and existing under the laws of the People's Republic of China. On information and belief, Shenzhen Tuozhu operates under the brand name "Bambu Lab" and holds itself forth under the English name Shenzhen Bambu Lab Co., Ltd. That name does not appear separately in China's National Enterprise Credit Information Publicity System.

6.      On information and belief, Counter-Defendant Shanghai Lunkuo Technology Co., Ltd. (上海轮廓科技有限公司, hereafter, "Shanghai Lunkuo") is a company organized and existing under the laws of the People's Republic of China. On information and belief, Shanghai Lunkuo conducts business, either directly or through its agents, on an ongoing basis in this judicial district and elsewhere in the United States. On information and belief, Shanghai Lunkuo holds itself forth under the English name Shanghai Contour Technology Co., Ltd. That name does not appear separately in China's National Enterprise Credit Information Publicity System, as Lunkuo is a phonetic spelling of the Chinese word that translates to Contour.

7.    On information and belief, Counter-Defendant Bambulab Limited is a company organized and existing under the laws of Hong Kong SAR, China, and is a wholly-owned subsidiary of Shenzhen Tuozhu Technology Co., Ltd.

8.    On information and belief, Counter-Defendants Tuozhu Technology Limited, is a company organized and existing under the laws of Hong Kong SAR, China, and is a wholly-owned subsidiary of Shenzhen Tuozhu Technology Co., Ltd.

9.    On information and belief, Counter-Defendants are technology companies that focus on 3D printers.

## JURISDICTION AND VENUE

10.    This is a civil action for declaratory judgment that arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02. The declaratory judgment claims asserted in the complaint seek declarations regarding infringement of patents pursuant to the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*

11.    Accordingly, this Court has subject matter jurisdiction of the declaratory judgment claims, under 28 U.S.C. §§ 2201 and 2202, that, as asserted in the complaint, seek declarations regarding infringement of patents, which give rise to subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

12.    This Court also has subject matter jurisdiction over Stratasys's patent infringement claims for the Patents-in-Suit pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

13.    This Court has personal jurisdiction over Counter-Defendants as Counter-Defendants submitted to the jurisdiction of this Court when they filed their complaint against Stratasys.

14.    Counter-Defendants have consented to jurisdiction and venue in this District by filing a declaratory judgment action against Stratasys in this District. Plaintiffs allege in their complaint that venue is proper in this District under 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), 1391(c)(2).

## BACKGROUND OF THE DISPUTE

15.    Stratasys was founded in 1988 and is a pioneer in the field of three-dimensional printing.  Stratasys was the original innovator in the field of fused deposition modeling (also known as material extrusion 3D printing), which is an additive manufacturing process that prints three-dimensional objects from computer models by building up layers of one or more extruded materials onto a platform using a device that has come to be generally known as a 3D printer. Stratasys has commercialized this technology (which it refers to as its "FDM" technology), and continues to do so today, selling Stratasys FDM® printers and filament, along with an ecosystem of software, accessories and services.

16.    Stratasys is an indirectly wholly-owned subsidiary of Stratasys Ltd.  Stratasys Ltd. is a publicly owned company organized under the laws of Israel that is publicly traded in the United States on the NASDAQ (ticker symbol: SSYS).

17.    Stratasys's printers are backed by its proprietary technologies.  Stratasys holds over 2,000 patents and pending patents internationally. Its 3D printing systems utilize its proprietary extrusion-based FDM®, inkjet-based PolyJet™, powder-bed-based SAF®, photopolymer-based P3™, and Neo® stereolithography technologies to enable the production of prototypes, tools used for production, and manufactured goods directly from 3D CAD files or other 3D content.

18.    In 2012, Stratasys, Inc. merged with Objet Ltd. to form the corporate entity Stratasys Ltd.  Today, Stratasys Ltd. and its subsidiaries, including Stratasys, Inc., have more than

1,900 employees worldwide, hold thousands of granted or pending patents globally, and have received numerous awards for technology and leadership.

19.     Over the years, other companies began to make and sell 3D printers that incorporate features and capabilities involving the extrusion of materials in additive layers to form 3D objects. For example, by 2022, Counter-Defendants began making and selling its "Bambu Lab" branded printers.  On information and belief, the BambuLab printers are sold in the United States through direct sales over the Internet and through resellers.

20.     On information and belief, Counter-Defendants have sold their printers, including their Bambu Lab A1 3D printer, A1 mini 3D printer, P1P 3D printer, X1-Carbon 3D printer, P1S 3D printer and X1E 3D printer.  Counter-Defendants also make available and distribute marketing, instructional, and support materials to customers through their website, and maintains a technical support staff that provides support to customers, including through their website.

21.     On information and belief, Counter-Defendants' printers (including their Bambu Lab A1 3D printer, A1 mini 3D printer, P1P 3D printer, X1-Carbon ("X1C") 3D printer, P1S 3D printer and X1E 3D printer) transmit data to Counter-Defendants' servers or servers operated by third parties under Counter-Defendants' control.  This includes, but is not limited to, Counter-Defendants' servers that may be located in China.

22.     In fact, Counter-Defendants have acknowledged that their printers have security concerns.  In a November 2022 blog post, Counter-Defendants' representative stated that: "We admit that the security design of the whole Bambu Lab system was not the best from the very beginning.  The honest reason is simply that the initial team has a background in robotics, but very little experience in network security. We now understand, thanks to the community contributions,

26

that we have underestimated this issue, and there is no excuse for this."
https://blog.bambulab.com/answering-network-security-concerns/.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 9,168,698

23. Stratasys repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

24. On October 27, 2015, the United States Patent Office (USPTO) duly and lawfully issued United States Patent No. 9,168,698, entitled "Three-Dimensional Printer With Force Detection." By assignment, duly recorded with the USPTO, Stratasys owns all substantial rights to the '698 Patent, including the right to sue and recover damages for all infringement.

25. The '698 Patent claims priority to provisional application No. 61/719,874 filed on October 29, 2012.

26. The priority date for the '698 Patent is October 29, 2012.

27. The '698 Patent generally relates to methods for detecting contact force against an extruder or other tool head of a three-dimensional printer.

28. BambuLab has directly infringed and continues to directly infringe, the '698 Patent in violation of 35 U.S.C. § 271 (a) by using in the United States, without authorization, the accused products that practice various claims of the '698 Patent literally or under the doctrine of equivalents. Those products include, for example, Bambu's A1 and A1 mini printers.

29. As a non-limiting example, the Accused '698 Products meet every element of at least Claims 1, 2, 3, 4, 5, 7, 8, 9, 10, 12, and 15 of the '698 Patent literally or under the doctrine of equivalents. For example, Claim 1 recites:

1. A method comprising:

identifying build instructions for fabricating an object;

27

initiating a build using a three-dimensional printer comprising a fabrication tool and one or more sensors mechanically coupled to the fabrication tool, the one or more sensors configured to detect a current contact force between the fabrication tool and a separate structure;

detecting the current contact force based on a sensor signal from the one or more sensors; and

creating a control signal to control at least one component of the three-dimensional printer in response to the current contact force while depositing material during the build.

30.    For example, BambuLab makes, uses, sells and offers to sell various additive manufacturing systems (i.e., 3D printers), including the A1 and A1 mini, which are used for fabricating three-dimensional parts using build instructions.  A request to fabricate an object from build instructions can be received at least via the user interface on the printer and via the Bambu Studio or Handy apps.  The BambuLab A1 and A1 mini 3D printers include an extrusion nozzle with an extrusion force sensor (e.g., an eddy force sensor).  The force sensor is used to detect a force caused by nozzle clumping (e.g., the force of filament material clumped around the nozzle being pushed against the heated) and to automatically stop a print job based on this detected force. BambuLab thus directly infringed and continues to directly infringe each limitation of at least Claim 1 of the '698 Patent by using in the United States, without authorization the Accused '698 Products. *See* Attached Exhibit 1 (claim chart for '698 Patent).

31.    As another example, on information and belief, Shenzhen Tuozhu Technology Co. Ltd. has authorized Bambulab USA, Inc. to sell the accused products in the United States and import the accused products into the United States. On information and belief, Bambulab USA, Inc. sells the accused products in the United States and imports the accused products into the United States.

32.    To the extent Counter-Defendants do not perform each and every limitation of the claims of the '698 Patent, Counter-Defendants jointly infringe those claims.  In particular, BambuLab directs or controls its users of the Accused '698 Products to perform one or more limitations of the claims nationwide through its own websites, applications, and manuals, and expects and intends that the Accused '698 Products will be so used.  For example, Counter-Defendants require customers and users to use the accused products through the applications Counter-Defendants produce and distribute for use.  Counter-Defendants further require users of the accused products to agree to extensive terms and conditions.  Finally, Counter-Defendants' customers realize a tangible benefit by using Counter-Defendants' technology to print and manufacture tangible items.

33.    Counter-Defendants also indirectly infringe at least Claim 1 of the '698 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by third parties, including users, partners, affiliates, subsidiaries, resellers, distributors and service providers, in the United States with knowledge and specific intent that its efforts would result in the direct infringement of the '698 Patent.  For example, Counter-Defendants actively induce infringement of the '698 Patent by designing, manufacturing, selling, or distributing the Accused '698 Products and then training its customers and users on the use of those products and the accompanying applications, including through the creation and dissemination of supporting materials, maintenance guides, troubleshooting guides, software (including Bambu Studio and Bambu Handy), instructions, product manuals, and technical information.  *See* https://wiki.bambulab.com/en/home.  As another example, Counter-Defendants actively induce infringement of the '698 Patent by instructing, encouraging, or requiring their subsidiaries and affiliates in the United States to use, sell, offer for sale in the United States, and

importing into the United States, without authorization, the accused products that practice various claims of the '698 Patent, such as any BambuLab printer that is used in combination with the corresponding applications or controllers (e.g., the Bambu Studio and Bambu Handy, etc.).  As yet another example, Counter-Defendants actively induce infringement of the '698 Patent through the creation and dissemination of promotional and marketing materials and instructional videos.  *See* https://www.youtube.com/c/BambuLab.  Counter-Defendants' active inducement is done with the knowledge and the specific intent that its efforts would result in the direct infringement of the '698 Patent.

34.    At least the EDTX Defendants were put on notice of their direct and indirect infringement of the '698 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  The Counter-Defendants have knowledge of the '698 Patent and knowledge of how Counter-Defendants induce third parties to infringe that patent at least as early as August 5, 2024.

35.    Counter-Defendants are also liable for contributory infringement of the '698 Patent under 35 U.S.C. § 271(c) by selling or offering for sale the Accused '698 Products and/or other components e.g., filament, automatic material system, build plates, etc.) in the United States and importing the Accused '698 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) in the United States with knowledge that they are especially designed or adapted to operate in a manner that infringes the '698 Patent and are not a staple article or commodity of commerce suitable for substantially non-infringing use.  For example, on information and belief, Counter-Defendant BambuLab USA, Inc. imports various additive manufacturing systems, including the A1 and A1 mini, into the United States. Counter-Defendants contribute to infringement of the '698 Patent by, *inter alia*, promotion, and/or sales of the

infringing Accused '698 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) to third parties.

36.     The EDTX Defendants also have had knowledge of infringement of the '698 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '698 Patent and knowledge of how Counter-Defendants contribute to third parties' infringement of that patent at least as early as August 5, 2024.

37.     Counter-Defendants' infringement of the '698 Patent has been and continues to be willful.  At least as early as August 5, 2024, Counter-Defendants were notified of their infringing acts and deliberately continued to infringe the '698 Patent despite knowing of the existence of the patent and how Counter-Defendants infringe.   Further, Counter-Defendants have deliberately continued to encourage others' infringement of the '698 Patent, including by continuing to disseminate their marketing and technical materials to customers.

38.     Counter-Defendants' acts of infringement have injured and damaged Stratasys and will continue to injure and damage Stratasys.  Stratasys is therefore entitled to recover from Counter-Defendants the damages it has sustained as a result of Counter-Defendants' wrongful and continued acts in an amount to be proven at trial.

39.     Counter-Defendants' infringement has damaged and will continue to damage Stratasys irreparably, and Stratasys has no adequate remedy at law for its injuries.  In addition to actual damages, Stratasys is entitled to a permanent injunction enjoining Counter-Defendants from infringing the '698 Patent.

40.     Stratasys is entitled to all damages to which it otherwise is entitled because it has complied with 35 U.S.C. § 287 by marking its patent-practicing products with the number of the '698 Patent.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 10,556,381

41.    Stratasys repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

42.    On February 11, 2020, the United States Patent Office (USPTO) duly and lawfully issued United States Patent No. 10,556,381, entitled "Three-Dimensional Printer With Force Detection."  By assignment, duly recorded with the USPTO, Stratasys owns all substantial rights to the '381 Patent, including the right to sue and recover damages for all infringement.

43.    The '381 Patent claims priority to provisional application No. 61/719,874 filed on October 29, 2012.

44.    The priority date for the '381 Patent is October 29, 2012.

45.    The '381 Patent generally relates to a three-dimensional printer that includes an extruder or another tool head to detect contact forces during fabrication.

46.    BambuLab has directly infringed and continues to directly infringe the '381 Patent in violation of 35 U.S.C. § 271 (a) by using, selling, offering for sale in the United States, and importing into the United States, without authorization, the accused products that practice various claims of the '381 Patent literally or under the doctrine of equivalents.  Those products include, for example, Bambu's A1 and A1 mini printers.

47.    As a non-limiting example, the Accused '381 Products meet every element of at least Claims 1, 2, 5, 6, 9, 11, 12, and 14 of the '381 Patent literally or under the doctrine of equivalents.  For example, Claim 1 recites:

> 1.  A three-dimensional printer comprising:
>
> a fabrication tool including an extruder configured to extrude build material to fabricate an object during a build process;
>
> one or more sensors mechanically coupled to the extruder, wherein the one or more sensors are collectively operable to sense a contract

force between the extruder and a separate structure distinct from the fabrication tool; and

a controller configured to receive a signal from the one or more sensors on the extruder and to calculate the contact force between the extruder and the separate structure.

48.    For example, BambuLab makes, uses, sells and offers to sell various additive manufacturing systems (i.e., 3D printers), including the A1 and A1 mini, which are used for fabricating three-dimensional parts using build instructions.  A request to fabricate an object from build instructions can be received at least via the user interface on the printer and via the Bambu Studio or Handy apps.  The BambuLab A1 and A1 mini 3D printers include an extrusion nozzle with an extrusion force sensor (e.g., an eddy force sensor).  The force sensor is used to detect a force caused by nozzle clumping (e.g., the force of filament material clumped around the nozzle being pushed against the heatbed) and to automatically stop a print job based on this detected force. BambuLab thus directly infringed and continues to directly infringe each limitation of at least Claim 1 of the '381 Patent by using in the United States, without authorization the Accused '381 Products. *See* Attached Exhibit 2 (claim chart for '381 Patent).

49.    As another example, on information and belief, Shenzhen Tuozhu Technology Co. Ltd. has authorized Bambulab USA, Inc. to sell the accused products in the United States and import the accused products into the United States. On information and belief, Bambulab USA, Inc. sells the accused products in the United States and imports the accused products into the United States.

50.    To the extent Counter-Defendants do not perform each and every limitation of the claims of the '381 Patent, Counter-Defendants jointly infringe those claims.  In particular, BambuLab directs or controls its users of the Accused '381 Products to perform one or more limitations of the claims nationwide through its own websites, applications, and manuals, and

expects and intends that the Accused '381 Products will be so used. For example, Counter-Defendants require customers and users to use the accused products through the applications Counter-Defendants produce and distribute for use. Counter-Defendants further require users of the accused products to agree to extensive terms and conditions. Finally, Counter-Defendants' customers realize a tangible benefit by using Counter-Defendants' technology to print and manufacture tangible items.

51.    Counter-Defendants also indirectly infringe at least Claim 1 of the '381 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by third parties, including users, partners, affiliates, subsidiaries, resellers, distributors and service providers, in the United States with knowledge and specific intent that its efforts would result in the direct infringement of the '381 Patent. For example, Counter-Defendants actively induce infringement of the '381 Patent by designing, manufacturing, selling, or distributing the Accused '381 Products and then training its customers and users on the use of those products and the accompanying applications, including through the creation and dissemination of supporting materials, maintenance guides, troubleshooting guides, software (including Bambu Studio and Bambu Handy), instructions, product manuals, and technical information. *See* https://wiki.bambulab.com/en/home. As another example, Counter-Defendants actively induce infringement of the '381 Patent by instructing, encouraging, or requiring their subsidiaries and affiliates in the United States to use, sell, offer for sale in the United States, and importing into the United States, without authorization, the accused products that practice various claims of the '381 Patent, such as any BambuLab printer that is used in combination with the corresponding applications or controllers (e.g., the Bambu Studio and Bambu Handy, etc.). As yet another example, Counter-Defendants actively induce infringement of the '381 Patent through the

creation and dissemination of promotional and marketing materials and instructional videos.  *See* https://www.youtube.com/c/BambuLab.  Counter-Defendants' active inducement is done with the knowledge and the specific intent that its efforts would result in the direct infringement of the '381 Patent.

52.     At least the EDTX Defendants were put on notice of their direct and indirect infringement of the '381 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '381 Patent and knowledge of how Counter-Defendants induce third parties to infringe that patent at least as early as August 5, 2024.

53.     Counter-Defendants are also liable for contributory infringement of the '381 Patent under 35 U.S.C. § 271(c) by selling or offering for sale the Accused '381 Products and/or other components e.g., filament, automatic material system, build plates, etc.) in the United States and importing the Accused '381 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) in the United States with knowledge that they are especially designed or adapted to operate in a manner that infringes the '381 Patent and are not a staple article or commodity of commerce suitable for substantially non-infringing use.   Counter-Defendants contribute to infringement of the '381 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused '381 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) to third parties.

54.     The EDTX Defendants also have had knowledge of infringement of the '381 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '381 Patent and knowledge of how Counter-Defendants contribute to third parties' infringement of that patent at least as early as August 5, 2024.

55.     Counter-Defendants' infringement of the '381 Patent has been and continues to be willful.  At least as early as August 5, 2024, Counter-Defendants were notified of their infringing acts and deliberately continued to infringe the '381 Patent despite knowing of the existence of the patent and how Counter-Defendants infringe.   Further, Counter-Defendants have deliberately continued to encourage others' infringement of the '381 Patent, including by continuing to disseminate their marketing and technical materials to customers.

56.     Counter-Defendants' acts of infringement have injured and damaged Stratasys and will continue to injure and damage Stratasys.  Stratasys is therefore entitled to recover from Counter-Defendants the damages it has sustained as a result of Counter-Defendants' wrongful and continued acts in an amount to be proven at trial.

57.     Counter-Defendants' infringement has damaged and will continue to damage Stratasys irreparably, and Stratasys has no adequate remedy at law for its injuries.  In addition to actual damages, Stratasys is entitled to a permanent injunction enjoining Counter-Defendants from infringing the '381 Patent.

58.     Stratasys is entitled to all damages to which it otherwise is entitled because it has complied with 35 U.S.C. § 287 by marking its patent-practicing products with the number of the '381 Patent.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 10,569,466

59.     Stratasys repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

60.     On February 25, 2020, the United States Patent Office (USPTO) duly and lawfully issued United States Patent No. 10,569,466, entitled "Tagged Build Material For Three-Dimensional Printing."  By assignment, duly recorded with the USPTO, Stratasys owns all

substantial rights to the '466 Patent, including the right to sue and recover damages for all infringement.

61.    The '466 Patent claims priority to provisional application No. 61/719,874 filed on October 29, 2012.

62.    The priority date for the '466 Patent is October 29, 2012.

63.    The '466 Patent generally relates to data tags included on spools or cartridges of build material that is used by a three-dimensional printer during fabrication of a three-dimensional object.

64.    BambuLab has directly infringed and continues to directly infringe, the '466 Patent in violation of 35 U.S.C. § 271 (a) by using in the United States, without authorization, the accused products that practice various claims of the '466 Patent literally or under the doctrine of equivalents.  Those products include, for example, Bambu's X1C, X1E, and P1S, P1P, A1 and A1 mini printers.

65.    As a non-limiting example, the Accused '466 Products meet every element of at least Claims 1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 12, 16, 17, 19, and 20 of the '466 Patent literally or under the doctrine of equivalents.  For example, Claim 1 recites:

> 1.  A method comprising:
>
> providing a three dimensional printer that includes a tag sensor;
>
> receiving a request from a client over a network to fabricate an object on the three-dimensional printer, the three-dimensional printer coupled to a supply of a build material including a tag that stores at least one property of the build material;
>
> reading data from the tag with the tag sensor;
>
> providing the data from the tag to the client over the network, the data including at least one property of the build material;
>
> receiving one or more operational parameters from the client

selected for use in controlling operation of the three-dimensional printer when fabricating the object with the build material having the at least one property stored in the tag; and

fabricating the object with the build material according to the one or more operational parameters.

66.    For example, BambuLab makes, uses, sells and offers to sell various 3D printers, including the X1C, X1E, P1S, P1P, A1, and A1 mini, which are used for printing three-dimensional parts.  BambuLab's 3D printers print layers of a 3D part using an Automatic Material System (AMS), which includes RFID tag readers that read RFID data from an RFID tag on each of the filament spools (i.e., build material) in the AMS.  The RFID tag on each spool includes data related to various properties of the filaments including, for example, the material type and color of the filaments.  Furthermore, a request to fabricate an object from a three-dimensional model on the Bambu 3D printers is received at least via the Bambu Studio and/or Handy apps distributed by BambuLab.  The data from the RFID tag is provided to the Bambu Studio and/or Handy apps, which are coupled to the 3D printers via a network connection.  A build is initiated on the 3D printer using Bambu Studio and/or Handy based on the data received from the data tag (e.g., based on the type and color of build materials to use in the build), and the app sends fabrication instructions to the printer to fabricate the object based on the type and color of build materials. The BambuLab printers then fabricate the object according to the instructions received from Bambu Studio and/or Handy.  BambuLab thus directly infringed and continues to directly infringe each limitation of at least Claim 1 of the '466 Patent by using in the United States, without authorization the Accused '466 Products. *See* Attached Exhibit 3 (claim chart for '466 Patent).

67.    As another example, on information and belief, Shenzhen Tuozhu Technology Co. Ltd. has authorized Bambulab USA, Inc. to sell the accused products in the United States and import the accused products into the United States. On information and belief, Bambulab USA,

Inc. sells the accused products in the United States and imports the accused products into the United States.

68.    To the extent Counter-Defendants do not perform each and every limitation of the claims of the '466 Patent, Counter-Defendants jointly infringe those claims.  In particular, BambuLab directs or controls its users of the Accused '466 Products to perform one or more limitations of the claims nationwide through its own websites, applications, and manuals, and expects and intends that the Accused '466 Products will be so used.  For example, Counter-Defendants require customers and users to use the accused products through the applications Counter-Defendants produce and distribute for use.  Counter-Defendants further require users of the accused products to agree to extensive terms and conditions.  Finally, Counter-Defendants' customers realize a tangible benefit by using Counter-Defendants' technology to print and manufacture tangible items.

69.    Counter-Defendants also indirectly infringe at least Claim 1 of the '466 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by third parties, including users, partners, affiliates, subsidiaries, resellers, distributors and service providers, in the United States with knowledge and specific intent that its efforts would result in the direct infringement of the '466 Patent.  For example, Counter-Defendants actively induce infringement of the '466 Patent by designing, manufacturing, selling, or distributing the Accused '466 Products and then training its customers and users on the use of those products and the accompanying applications, including through the creation and dissemination of supporting materials, maintenance guides, troubleshooting guides, software (including Bambu Studio and Bambu Handy), instructions, product manuals, and technical information. *See* https://wiki.bambulab.com/en/home.  As another example, Counter-Defendants

actively induce infringement of the '466 Patent by instructing, encouraging, or requiring their subsidiaries and affiliates in the United States to use, sell, offer for sale in the United States, and importing into the United States, without authorization, the accused products that practice various claims of the '466 Patent, such as any BambuLab printer that is used in combination with the corresponding applications or controllers (e.g., the Bambu Studio and Bambu Handy, etc.).  As yet another example, Counter-Defendants actively induce infringement of the '466 Patent through the creation and dissemination of promotional and marketing materials and instructional videos.  *See* https://www.youtube.com/c/BambuLab.  Counter-Defendants' active inducement is done with the knowledge and the specific intent that its efforts would result in the direct infringement of the '466 Patent.

70.    At least the EDTX Defendants were put on notice of their direct and indirect infringement of the '466 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '466 Patent and knowledge of how Counter-Defendants induce third parties to infringe that patent at least as early as August 5, 2024.

71.    Counter-Defendants are also liable for contributory infringement of the '466 Patent under 35 U.S.C. § 271(c) by selling or offering for sale the Accused '466 Products and/or other components e.g., filament, automatic material system, build plates, etc.) in the United States and importing the Accused '466 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) in the United States with knowledge that they are especially designed or adapted to operate in a manner that infringes the '466 Patent and are not a staple article or commodity of commerce suitable for substantially non-infringing use.  Counter-Defendants contribute to infringement of the '466 Patent by, *inter alia*, promotion, and/or sales of the

infringing Accused '466 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) to third parties.

72.    The EDTX Defendants also have had knowledge of infringement of the '466 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '466 Patent and knowledge of how Counter-Defendants contribute to third parties' infringement of that patent at least as early as August 5, 2024.

73.    Counter-Defendants' infringement of the '466 Patent has been and continues to be willful.  At least as early as August 5, 2024, Counter-Defendants were notified of their infringing acts and deliberately continued to infringe the '466 Patent despite knowing of the existence of the patent and how Counter-Defendants infringe.  Further, Counter-Defendants have deliberately continued to encourage others' infringement of the '466 Patent, including by continuing to disseminate their marketing and technical materials to customers.

74.    Counter-Defendants' acts of infringement have injured and damaged Stratasys and will continue to injure and damage Stratasys.  Stratasys is therefore entitled to recover from Counter-Defendants the damages it has sustained as a result of Counter-Defendants' wrongful and continued acts in an amount to be proven at trial.

75.    Counter-Defendants' infringement has damaged and will continue to damage Stratasys irreparably, and Stratasys has no adequate remedy at law for its injuries.  In addition to actual damages, Stratasys is entitled to a permanent injunction enjoining Counter-Defendants from infringing the '466 Patent.

76.    Stratasys is entitled to all damages to which it otherwise is entitled because it has complied with 35 U.S.C. § 287 by marking its patent-practicing products with the number of the '466 Patent.

<u>**COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 11,167,464**</u>

77.     Stratasys repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

78.     On October 27, 2015, the United States Patent Office (USPTO) duly and lawfully issued United States Patent No. 11,167,464, entitled "Tagged Build Material For Three-Dimensional Printing" By assignment, duly recorded with the USPTO, Stratasys owns all substantial rights to the '464 Patent, including the right to sue and recover damages for all infringement.

79.     The '464 Patent claims priority to provisional application No. 61/719,874 filed on October 29, 2012.

80.     The priority date for the '464 Patent is October 29, 2012.

81.     The '464 Patent generally relates to data tags included on spools or cartridges of build material that is used by a three-dimensional printer during fabrication of a three-dimensional object.

82.     BambuLab has directly infringed and continues to directly infringe, the '464 Patent in violation of 35 U.S.C. § 271 (a) by using in the United States, without authorization, the accused products that practice various claims of the '464 Patent literally or under the doctrine of equivalents.  Those products include, for example, Bambu's X1C, X1E, and P1S, P1P, A1 and A1 mini printers.

83.     As a non-limiting example, the Accused '464 Products meet every element of at least Claims 1, 2, 3, 4, 5, 6, 12, 13, 14, 15, 17, and 18 of the '464 Patent literally or under the doctrine of equivalents.  For example, Claim 12 recites:

    12.  A system, comprising:

a three-dimensional printer;

a coupling adapted to receive a supply of a build material;

a processor configured to determine an operational parameter of a fabrication process using the three-dimensional printer based upon the data and to perform a diagnostic test to determine whether the operational parameter is suitable for the three-dimensional printer, the operational parameter including at least one of a build platform temperature, a build volume temperature, an infill requirement, a rafting requirement, a support structure requirement, and a cooling requirement; and

a controller for the three-dimensional printer, the controller configured to, when the operational parameter is suitable for the three-dimensional printer according to the diagnostic test, control operation of the three-dimensional printer during the fabrication process according to the operational parameter to fabricate an object with the three-dimensional printer.

84.    For example, BambuLab makes, uses, sells and offers to sell various 3D printers, including the X1C, X1E, P1S, P1P, A1, and A1 mini, which are used for printing three-dimensional parts.  BambuLab's 3D printers print layers of a 3D part using an Automatic Material System (AMS), which includes RFID tag readers that read RFID data from an RFID tag on each of the filament spools (i.e., build material) in the AMS.  The RFID tag on each spool includes data related to various properties of the filaments including, for example, the material type of the filaments.  The filaments may include a build material filament and a support structure filament. Furthermore, a request to fabricate an object from a three-dimensional model on the Bambu 3D printers is received at least via the Bambu Studio and/or Handy apps distributed by BambuLab. The data from the RFID tag is provided to the Bambu Studio and/or Handy apps, which are coupled to the 3D printers via a network connection.  A build is initiated on the 3D printer using Bambu Studio and/or Handy based on the data received from the data tag (e.g., based on the type of build material and support structure material to use in the build), and the app sends fabrication instructions to the printer to fabricate the object based on the type of build and support structure

materials. The BambuLab printers also perform a diagnostic test to determine whether an operational parameter, such as a support structure requirement for the build, is suitable for the three-dimensional printer (e.g., the support structure filament actually in the printer). For example, the printer determines if the support structure filament in the printer is compatible with the build material filament in the printer. The BambuLab printers then fabricate the object according to the instructions received from Bambu Studio and/or Handy. BambuLab thus directly infringed and continues to directly infringe each limitation of at least Claim 12 of the '464 Patent by using, selling, offering for sale in the United States, and importing into the United States, without authorization the Accused '464 Products. *See* Attached Exhibit 4 (claim chart for '464 Patent).

85.     As another example, on information and belief, Shenzhen Tuozhu Technology Co. Ltd. has authorized Bambulab USA, Inc. to sell the accused products in the United States and import the accused products into the United States. On information and belief, Bambulab USA, Inc. sells the accused products in the United States and imports the accused products into the United States.

86.     To the extent Counter-Defendants do not perform each and every limitation of the claims of the '464 Patent, Counter-Defendants jointly infringe those claims. In particular, BambuLab directs or controls its users of the Accused '464 Products to perform one or more limitations of the claims nationwide through its own websites, applications, and manuals, and expects and intends that the Accused '464 Products will be so used. For example, Counter-Defendants require customers and users to use the accused products through the applications Counter-Defendants produce and distribute for use. Counter-Defendants further require users of the accused products to agree to extensive terms and conditions. Finally, Counter-Defendants'

customers realize a tangible benefit by using Counter-Defendants' technology to print and manufacture tangible items.

87.    Counter-Defendants also indirectly infringe at least Claim 12 of the '464 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by third parties, including users, partners, affiliates, subsidiaries, resellers, distributors and service providers, in the United States with knowledge and specific intent that its efforts would result in the direct infringement of the '464 Patent.  For example, Counter-Defendants actively induce infringement of the '464 Patent by designing, manufacturing, selling, or distributing the Accused '464 Products and then training its customers and users on the use of those products and the accompanying applications, including through the creation and dissemination of supporting materials, maintenance guides, troubleshooting guides, software (including Bambu Studio and Bambu Handy), instructions, product manuals, and technical information. *See* https://wiki.bambulab.com/en/home.  As another example, Counter-Defendants actively induce infringement of the '464 Patent by instructing, encouraging, or requiring their subsidiaries and affiliates in the United States to use, sell, offer for sale in the United States, and importing into the United States, without authorization, the accused products that practice various claims of the '464 Patent, such as any BambuLab printer that is used in combination with the corresponding applications or controllers (e.g., the Bambu Studio and Bambu Handy, etc.).  As yet another example, Counter-Defendants actively induce infringement of the '464 Patent through the creation and dissemination of promotional and marketing materials and instructional videos.  *See* https://www.youtube.com/c/BambuLab.  Counter-Defendants' active inducement is done with the knowledge and the specific intent that its efforts would result in the direct infringement of the '464 Patent.

88.     At least the EDTX Defendants were put on notice of their direct and indirect infringement of the '464 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '464 Patent and knowledge of how Counter-Defendants induce third parties to infringe that patent at least as early as August 5, 2024.

89.     Counter-Defendants are also liable for contributory infringement of the '464 Patent under 35 U.S.C. § 271(c) by selling or offering for sale the Accused '464 Products and/or other components e.g., filament, automatic material system, build plates, etc.) in the United States and importing the Accused '464 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) in the United States with knowledge that they are especially designed or adapted to operate in a manner that infringes the '464 Patent and are not a staple article or commodity of commerce suitable for substantially non-infringing use.  Counter-Defendants contribute to infringement of the '464 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused '464 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) to third parties.

90.     The EDTX Defendants also have had knowledge of infringement of the '464 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '464 Patent and knowledge of how Counter-Defendants contribute to third parties' infringement of that patent at least as early as August 5, 2024.

91.     Counter-Defendants' infringement of the '464 Patent has been and continues to be willful.  At least as early as August 5, 2024, Counter-Defendants were notified of their infringing acts and deliberately continued to infringe the '464 Patent despite knowing of the existence of the patent and how Counter-Defendants infringe.  Further, Counter-Defendants have deliberately

46

continued to encourage others' infringement of the '464 Patent, including by continuing to disseminate their marketing and technical materials to customers.

92.      Counter-Defendants' acts of infringement have injured and damaged Stratasys and will continue to injure and damage Stratasys.  Stratasys is therefore entitled to recover from Counter-Defendants the damages it has sustained as a result of Counter-Defendants' wrongful and continued acts in an amount to be proven at trial.

93.      Counter-Defendants' infringement has damaged and will continue to damage Stratasys irreparably, and Stratasys has no adequate remedy at law for its injuries.  In addition to actual damages, Stratasys is entitled to a permanent injunction enjoining Counter-Defendants from infringing the '464 Patent.

94.      Stratasys is entitled to all damages to which it otherwise is entitled because it has complied with 35 U.S.C. § 287 by marking its patent-practicing products with the number of the '464 Patent.

## COUNT V – INFRINGEMENT OF U.S. PATENT NO. 8,562,324

95.      Stratasys repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

96.      On October 22, 2013, the United States Patent Office (USPTO) duly and lawfully issued United States Patent No. 8,562,324, entitled "Networked Three-Dimensional Printing."  By assignment, duly recorded with the USPTO, Stratasys owns all substantial rights to the '324 Patent, including the right to sue and recover damages for all infringement.

97.      The '324 Patent claims priority to U.S. Patent Application No. 12/858,622 filed on August 18, 2010.

98.      The priority date for the '324 Patent is August 18, 2010.

99.    The '324 Patent generally relates to providing networking capabilities to three-dimensional printers so that the fabrication resources are improved.

100.    BambuLab has directly infringed and continues to directly infringe the '324 Patent in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale in the United States, and importing into the United States, without authorization, the accused products that practice various claims of the '324 Patent literally or under the doctrine of equivalents.  Those products include, for example, Bambu's X1C, X1E, P1S, P1P, A1 and A1 mini printers.

101.    As a non-limiting example, the Accused '324 Products meet every element of at least Claims 1, 3, 5, 6, 7, 8, 9, 10, 11, 17, 18, 19, 20, 21, and 22 of the '324 Patent literally or under the doctrine of equivalents.  For example, Claim 1 recites:

> 1.  A device comprising:
>
> a three-dimensional printer including a build volume;
>
> a   network   interface   coupled   to   a   data   network;
> a video camera positioned to capture video of the build volume from a point of view; and
>
> a processor configured to receive a three-dimensional model through the network interface, and to control operation of the three-dimensional printer to fabricate the three-dimensional model as an object within the build volume of the three-dimensional printer, the processor further configured to provide a user interface to a remote user accessing the device through the network interface, and to present in the user interface an image of the build volume from the video camera and a two-dimensional projection of the three-dimensional model from the point of view of the video camera.

102.    For example, BambuLab makes, uses, sells and offers to sell various 3D printers, including the X1C, X1E, P1S, P1P, A1, and A1 mini, which are used for printing 3D parts in a build volume (i.e., build chamber) of the printer.  The BambuLab printers include a network interface (e.g., an Ethernet, Wi-Fi, LAN, etc.  Interface) and a chamber camera that captures video of the build chamber.  The BambuLab printers also include a processor that receives a 3D model

and controls operation of the printer to fabricate an object from the 3D model.  A request to fabricate an object from a 3D model can be received from the Bambu Studio or Handy app via the printer's network interface.  In addition, the processor of the BambuLab printers executes software and/or firmware to collect image content from the chamber camera during execution of the print job and to provide remote users with access to the camera content and a 2D projection of the print job via the Bambu Studio and/or Bambu Handy apps in a user interface.  BambuLab thus directly infringed and continues to directly infringe each limitation of at least Claim 1 of the '324 Patent by using, selling, offering for sale in the United States, and importing into the United States, without authorization the Accused '324 Products. *See* Attached Exhibit 5 (claim chart for '324 Patent).

103.    As another example, on information and belief, Shenzhen Tuozhu Technology Co. Ltd. has authorized Bambulab USA, Inc. to sell the accused products in the United States and import the accused products into the United States. On information and belief, Bambulab USA, Inc. sells the accused products in the United States and imports the accused products into the United States.

104.    To the extent Counter-Defendants do not perform each and every limitation of the claims of the '324 Patent, Counter-Defendants jointly infringe those claims.  In particular, BambuLab directs or controls its users of the Accused '324 Products to perform one or more limitations of the claims nationwide through its own websites, applications, and manuals, and expects and intends that the Accused '324 Products will be so used.  For example, Counter-Defendants require customers and users to use the accused products through the applications Counter-Defendants produce and distribute for use.  Counter-Defendants further require users of the accused products to agree to extensive terms and conditions.  Finally, Counter-Defendants'

49

customers realize a tangible benefit by using Counter-Defendants' technology to print and manufacture tangible items.

105.    Counter-Defendants also indirectly infringe at least Claim 1 of the '324 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by third parties, including users, partners, affiliates, subsidiaries, resellers, distributors and service providers, in the United States with knowledge and specific intent that its efforts would result in the direct infringement of the '324 Patent.  For example, Counter-Defendants actively induce infringement of the '324 Patent by designing, manufacturing, selling, or distributing the Accused '324 Products and then training its customers and users on the use of those products and the accompanying applications, including through the creation and dissemination of supporting materials, maintenance guides, troubleshooting guides, software (including Bambu Studio and Bambu Handy), instructions, product manuals, and technical information. *See* https://wiki.bambulab.com/en/home.  As another example, Counter-Defendants actively induce infringement of the '324 Patent by instructing, encouraging, or requiring their subsidiaries and affiliates in the United States to use, sell, offer for sale in the United States, and importing into the United States, without authorization, the accused products that practice various claims of the '324 Patent, such as any BambuLab printer that is used in combination with the corresponding applications or controllers (e.g., the Bambu Studio and Bambu Handy, etc.).  As yet another example, Counter-Defendants actively induce infringement of the '324 Patent through the creation and dissemination of promotional and marketing materials and instructional videos.  *See* https://www.youtube.com/c/BambuLab.  Counter-Defendants' active inducement is done with the knowledge and the specific intent that its efforts would result in the direct infringement of the '324 Patent.

106.    At least the EDTX Defendants were put on notice of their direct and indirect infringement of the '324 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '324 Patent and knowledge of how Counter-Defendants induce third parties to infringe that patent at least as early as August 5, 2024.

107.    Counter-Defendants are also liable for contributory infringement of the '324 Patent under 35 U.S.C. § 271(c) by selling or offering for sale the Accused '324 Products and/or other components e.g., filament, automatic material system, build plates, etc.) in the United States and importing the Accused '324 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) in the United States with knowledge that they are especially designed or adapted to operate in a manner that infringes the '324 Patent and are not a staple article or commodity of commerce suitable for substantially non-infringing use.  Counter-Defendants contribute to infringement of the '324 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused '324 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) to third parties.

108.    The EDTX Defendants also have had knowledge of infringement of the '324 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '324 Patent and knowledge of how Counter-Defendants contribute to third parties' infringement of that patent at least as early as August 5, 2024.

109.    Counter-Defendants' infringement of the '324 Patent has been and continues to be willful.  At least as early as August 5, 2024, Counter-Defendants were notified of their infringing acts and deliberately continued to infringe the '324 Patent despite knowing of the existence of the patent and how Counter-Defendants infringe.  Further, Counter-Defendants have deliberately

continued to encourage others' infringement of the '324 Patent, including by continuing to disseminate their marketing and technical materials to customers.

110.    Counter-Defendants' acts of infringement have injured and damaged Stratasys and will continue to injure and damage Stratasys.  Stratasys is therefore entitled to recover from Counter-Defendants the damages it has sustained as a result of Counter-Defendants' wrongful and continued acts in an amount to be proven at trial.

111.    Counter-Defendants' infringement has damaged and will continue to damage Stratasys irreparably, and Stratasys has no adequate remedy at law for its injuries.  In addition to actual damages, Stratasys is entitled to a permanent injunction enjoining Counter-Defendants from infringing the '324 Patent.

112.    Stratasys is entitled to all damages to which it otherwise is entitled because it has complied with 35 U.S.C. § 287 by marking its patent-practicing products with the number of the '324 Patent.

### COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 8,747,097

113.    Stratasys repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

114.    On June 10, 2014, the United States Patent Office (USPTO) duly and lawfully issued United States Patent No. 8,747,097, entitled "Networked Three-Dimensional Printer With Three-Dimensional Scanner."  By assignment, duly recorded with the USPTO, Stratasys owns all substantial rights to the '097 Patent, including the right to sue and recover damages for all infringement.

115.    The '097 Patent claims priority to U.S. Patent Application No. 12/858,622 filed on August 18, 2010.

116.    The priority date for the '097 Patent is August 18, 2010.

117.    The '097 Patent generally relates to providing networking capabilities to three-dimensional printers so that the fabrication resources are improved.

118.    BambuLab has directly infringed and continues to directly infringe the '097 Patent in violation of 35 U.S.C. § 271 (a) by using, selling, offering for sale in the United States, and importing into the United States, without authorization, the accused products that practice various claims of the '097 Patent literally or under the doctrine of equivalents.  Those products include, for example, Bambu's X1C and X1E printers.

119.    As a non-limiting example, the Accused '097 Products meet every element of at least Claims 1, 2, 4, 5, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18 of the '097 Patent literally or under the doctrine of equivalents.  For example, Claim 1 recites:

> 1.  A three-dimensional printer including a build volume, the three-dimensional printer comprising:
>
> a three-dimensional scanner configured to capture three-dimensional information from an object being fabricated within the build volume during a print job executing on the three-dimensional printer;
>
> a machine vision system configured to capture and analyze image content from the three-dimensional scanner, thereby providing a status of the print job executing on the three-dimensional printer;
>
> a network interface configured to couple the three-dimensional printer in a communicating relationship with a data network; and
>
> a web server configured to transmit the status of the print job for display at a remote client through the network interface.

120.    For example, BambuLab makes, uses, sells, offers to sell various 3D printers, including the X1C and X1E, that include a build volume (i.e., a build chamber) and a 3D scanner (e.g., a lidar scanner) that captures information about an object being printed in the chamber.  The BambuLab 3D printers also include a machine vision system (e.g., a processor that executes

software and/or firmware) that analyses information from the lidar scanner to provide a status of the object being printed (e.g., an artificial intelligence (AI) inspection of the first layer of such object). In addition, BambuLab's X1C and X1E printers include a network interface (e.g., an Ethernet, Wi-Fi, LAN, etc. Interface) and a web server that transmits the status of the print job (e.g., a camera view of the print job, a completion status of the print job, and/or the results of the AI inspection) via the network interface. BambuLab thus directly infringed and continues to directly infringe each limitation of at least Claim 1 of the '097 Patent by using, selling, offering for sale in the United States, and importing into the United States, without authorization the Accused '097 Products. *See* Attached Exhibit 6 (claim chart for '097 Patent).

121. As another example, on information and belief, Shenzhen Tuozhu Technology Co. Ltd. has authorized Bambulab USA, Inc. to sell the accused products in the United States and import the accused products into the United States. On information and belief, Bambulab USA, Inc. sells the accused products in the United States and imports the accused products into the United States.

122. To the extent Counter-Defendants do not perform each and every limitation of the claims of the '097 Patent, Counter-Defendants jointly infringe those claims. In particular, BambuLab directs or controls its users of the Accused '097 Products to perform one or more limitations of the claims nationwide through its own websites, applications, and manuals, and expects and intends that the Accused '097 Products will be so used. For example, Counter-Defendants require customers and users to use the accused products through the applications Counter-Defendants produce and distribute for use. Counter-Defendants further require users of the accused products to agree to extensive terms and conditions. Finally, Counter-Defendants'

customers realize a tangible benefit by using Counter-Defendants' technology to print and manufacture tangible items.

123.    Counter-Defendants also indirectly infringe at least Claim 1 of the '097 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by third parties, including users, partners, affiliates, subsidiaries, resellers, distributors and service providers, in the United States with knowledge and specific intent that its efforts would result in the direct infringement of the '097 Patent.  For example, Counter-Defendants actively induce infringement of the '097 Patent by designing, manufacturing, selling, or distributing the Accused '097 Products and then training its customers and users on the use of those products and the accompanying applications, including through the creation and dissemination of supporting materials, maintenance guides, troubleshooting guides, software (including Bambu Studio and Bambu Handy), instructions, product manuals, and technical information. *See* https://wiki.bambulab.com/en/home.  As another example, Counter-Defendants actively induce infringement of the '097 Patent by instructing, encouraging, or requiring their subsidiaries and affiliates in the United States to use, sell, offer for sale in the United States, and importing into the United States, without authorization, the accused products that practice various claims of the '097 Patent, such as any BambuLab printer that is used in combination with the corresponding applications or controllers (e.g., the Bambu Studio and Bambu Handy, etc.).  As yet another example, Counter-Defendants actively induce infringement of the '097 Patent through the creation and dissemination of promotional and marketing materials and instructional videos.  *See* https://www.youtube.com/c/BambuLab.  Counter-Defendants' active inducement is done with the knowledge and the specific intent that its efforts would result in the direct infringement of the '097 Patent.

124.    At least the EDTX Defendants were put on notice of their direct and indirect infringement of the '097 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '097 Patent and knowledge of how Counter-Defendants induce third parties to infringe that patent at least as early as August 5, 2024.

125.    Counter-Defendants are also liable for contributory infringement of the '097 Patent under 35 U.S.C. § 271(c) by selling or offering for sale the Accused '097 Products and/or other components e.g., filament, automatic material system, build plates, etc.) in the United States and importing the Accused '097 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) in the United States with knowledge that they are especially designed or adapted to operate in a manner that infringes the '097 Patent and are not a staple article or commodity of commerce suitable for substantially non-infringing use.  Counter-Defendants contribute to infringement of the '097 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused '097 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) to third parties.

126.    The EDTX Defendants also have had knowledge of infringement of the '097 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '097 Patent and knowledge of how Counter-Defendants contribute to third parties' infringement of that patent at least as early as August 5, 2024.

127.    Counter-Defendants' infringement of the '097 Patent has been and continues to be willful.  At least as early as August 5, 2024, Counter-Defendants were notified of their infringing acts and deliberately continued to infringe the '097 Patent despite knowing of the existence of the patent and how Counter-Defendants infringe.  Further, Counter-Defendants have deliberately

continued to encourage others' infringement of the '097 Patent, including by continuing to disseminate their marketing and technical materials to customers.

128.    Counter-Defendants' acts of infringement have injured and damaged Stratasys and will continue to injure and damage Stratasys.  Stratasys is therefore entitled to recover from Counter-Defendants the damages it has sustained as a result of Counter-Defendants' wrongful and continued acts in an amount to be proven at trial.

129.    Counter-Defendants' infringement has damaged and will continue to damage Stratasys irreparably, and Stratasys has no adequate remedy at law for its injuries.  In addition to actual damages, Stratasys is entitled to a permanent injunction enjoining Counter-Defendants from infringing the '097 Patent.

130.    Stratasys is entitled to all damages to which it otherwise is entitled because it has complied with 35 U.S.C. § 287 by marking its patent-practicing products with the number of the '097 Patent.

### <u>COUNT VII – INFRINGEMENT OF U.S. PATENT NO. 9,421,713</u>

131.    Stratasys repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

132.    On August 23, 2016, the United States Patent Office (USPTO) duly and lawfully issued United States Patent No. 9,421,713, entitled "Additive Manufacturing Method For Printing Three-Dimensional Parts With Purge Towers" By assignment, duly recorded with the USPTO, Stratasys owns all substantial rights to the '713 Patent, including the right to sue and recover damages for all infringement.

133.    The '713 Patent was filed on March 8, 2013 (U.S. Patent Application No. 13/790,924).

134.    The priority date for the '713 Patent is based on its conception date, which is at least as early as May 23, 2011.

135.    The '713 Patent generally relates additive three-dimensional printing with purge towers.

136.    BambuLab has directly infringed and continues to directly infringe the '713 Patent in violation of 35 U.S.C. § 271 (a) by using in the United States, without authorization, the accused products that practice various claims of the '713 Patent literally or under the doctrine of equivalents.  Those products include, for example, Bambu's X1C, X1E, and P1S, and P1P printers.

137.    As a non-limiting example, the Accused '713 Products meet every element of at least Claims 1, 2, 5, 6, 7, 9, 16, and 17 of the '713 Patent literally or under the doctrine of equivalents.  For example, Claim 1 recites:

> 1.  A method for printing a three-dimensional part with an additive manufacturing system, the method comprising:
>
> Printing layers of the three-dimensional part and of a support structure for the three-dimensional part from multiple print heads or deposition lines using a layer-based, additive manufacturing technique;
>
> switching the print heads or deposition line between stand-by modes and operating modes in-between the printing of the layers of the three-dimensional part and the support structure;
>
> performing a purge operation for each print head or deposition line switched to the operating mode, the purge operation comprising printing at least one purge tower in a layer-by-layer manner, wherein the layers of the at least one purge tower are printed from the print head or deposition line switched to the operating mode.

138.    For example, BambuLab makes, uses, sells and offers to sell various additive manufacturing systems (i.e., 3D printers), including the X1C, X1E, P1S, A1, and A1 mini which are used for printing three-dimensional parts.  BambuLab's 3D printers print layers of a 3D part using an Automatic Material Systems (AMS) which supports multiple filament spools each having

an independent deposition line operative coupled to the print head of the 3D printer. Furthermore, BambuLab distributes Bambu Studio for use in conjunction with its 3D printers. Bambu Studio includes use of support material (as needed) in its sliver software, and it instructs the 3D printer to switch deposition lines between printing of part material and printing of support material. In addition, the Bambu Studio slicer software instructs the BambuLab 3D printers to perform a purge operation to a prime tower when a deposition line is switched between the part material and the support material. BambuLab thus directly infringed and continues to directly infringe each limitation of at least Claim 1 of the '713 Patent by using, in the United States, without authorization the Accused '713 Products. *See* Attached Exhibit 7 (claim chart for '713 Patent).

139. As another example, on information and belief, Shenzhen Tuozhu Technology Co. Ltd. has authorized Bambulab USA, Inc. to sell the accused products in the United States and import the accused products into the United States. On information and belief, Bambulab USA, Inc. sells the accused products in the United States and imports the accused products into the United States.

140. To the extent Counter-Defendants do not perform each and every limitation of the claims of the '713 Patent, Counter-Defendants jointly infringe those claims. In particular, BambuLab directs or controls its users of the Accused '713 Products to perform one or more limitations of the claims nationwide through its own websites, applications, and manuals, and expects and intends that the Accused '713 Products will be so used. For example, Counter-Defendants require customers and users to use the accused products through the applications Counter-Defendants produce and distribute for use. Counter-Defendants further require users of the accused products to agree to extensive terms and conditions. Finally, Counter-Defendants'

customers realize a tangible benefit by using Counter-Defendants' technology to print and manufacture tangible items.

141.    Counter-Defendants also indirectly infringe at least Claim 1 of the '713 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by third parties, including users, partners, affiliates, subsidiaries, resellers, distributors and service providers, in the United States with knowledge and specific intent that its efforts would result in the direct infringement of the '713 Patent.  For example, Counter-Defendants actively induce infringement of the '713 Patent by designing, manufacturing, selling, or distributing the Accused '713 Products and then training its customers and users on the use of those products and the accompanying applications, including through the creation and dissemination of supporting materials, maintenance guides, troubleshooting guides, software (including Bambu Studio and Bambu Handy), instructions, product manuals, and technical information. *See* https://wiki.bambulab.com/en/home.  As another example, Counter-Defendants actively induce infringement of the '713 Patent by instructing, encouraging, or requiring their subsidiaries and affiliates in the United States to use, sell, offer for sale in the United States, and importing into the United States, without authorization, the accused products that practice various claims of the '713 Patent, such as any BambuLab printer that is used in combination with the corresponding applications or controllers (e.g., the Bambu Studio and Bambu Handy, etc.).  As yet another example, Counter-Defendants actively induce infringement of the '713 Patent through the creation and dissemination of promotional and marketing materials and instructional videos.  S*ee* https://www.youtube.com/c/BambuLab.  Counter-Defendants' active inducement is done with the knowledge and the specific intent that its efforts would result in the direct infringement of the '713 Patent.

142.    At least the EDTX Defendants were put on notice of their direct and indirect infringement of the '713 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '713 Patent and knowledge of how Counter-Defendants induce third parties to infringe that patent at least as early as August 5, 2024.

143.    Counter-Defendants are also liable for contributory infringement of the '713 Patent under 35 U.S.C. § 271(c) by selling or offering for sale the Accused '713 Products and/or other components e.g., filament, automatic material system, build plates, etc.) in the United States and importing the Accused '713 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) in the United States with knowledge that they are especially designed or adapted to operate in a manner that infringes the '713 Patent and are not a staple article or commodity of commerce suitable for substantially non-infringing use.  Counter-Defendants contribute to infringement of the '713 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused '713 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) to third parties.

144.    The EDTX Defendants also have had knowledge of infringement of the '713 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '713 Patent and knowledge of how Counter-Defendants contribute to third parties' infringement of that patent at least as early as August 5, 2024.

145.    Counter-Defendants' infringement of the '713 Patent has been and continues to be willful.  At least as early as August 5, 2024, Counter-Defendants were notified of their infringing acts and deliberately continued to infringe the '713 Patent despite knowing of the existence of the patent and how Counter-Defendants infringe.  Further, Counter-Defendants have deliberately

continued to encourage others' infringement of the '713 Patent, including by continuing to disseminate their marketing and technical materials to customers.

146.    Counter-Defendants' acts of infringement have injured and damaged Stratasys and will continue to injure and damage Stratasys.  Stratasys is therefore entitled to recover from Counter-Defendants the damages it has sustained as a result of Counter-Defendants' wrongful and continued acts in an amount to be proven at trial.

147.    Counter-Defendants' infringement has damaged and will continue to damage Stratasys irreparably, and Stratasys has no adequate remedy at law for its injuries.  In addition to actual damages, Stratasys is entitled to a permanent injunction enjoining Counter-Defendants from infringing the '713 Patent.

148.    Stratasys is entitled to all damages to which it otherwise is entitled because it has complied with 35 U.S.C. § 287 by marking its patent-practicing products with the number of the '713 Patent.

## COUNT VIII – INFRINGEMENT OF U.S. PATENT NO. 7,555,357

149.    Stratasys repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

150.    On October 27, 2015, the United States Patent Office (USPTO) duly and lawfully issued United States Patent 7,555,357 entitled "Method For Building Three-Dimensional Objects With Extrusion-Based Layer Deposition Systems."  By assignment, duly recorded with the USPTO, Stratasys owns all substantial rights to the '357 Patent, including the right to sue and recover damages for all infringement.

151.    The '357 Patent was filed on January 31, 2006 (U.S. Patent Application No. 11/343,355).

152.    The priority date for the '357 Patent is based on its conception date, which is at least as early as October 18, 2004.

153.    The '357 Patent generally relates to methods of forming three-dimensional objects using an extrusion-based layered deposition system that generates a build path for building a layer of the three-dimensional object where the build path defines a void region.

154.    BambuLab has directly infringed and continues to directly infringe the '357 Patent in violation of 35 U.S.C. § 271(a) by using in the United States, without authorization, the accused products that practice various claims of the '357 Patent literally or under the doctrine of equivalents.  Those products include, for example, Bambu's X1C, X1E, and P1S, P1P, A1 and A1 mini printers.

155.    As a non-limiting example, the Accused '357 Products meet every element of at least Claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, and 19 of the '357 Patent literally or under the doctrine of equivalents.  For example, Claim 15 recites:

> 15.    A method of forming a three-dimensional object using an extrusion-based layered deposition system, the method comprising:
>
> generating a build path for building a layer of the three-dimensional object with a plurality of first deposition roads based on a first road width resolution, wherein the build path defines a void region having dimensions that are smaller than the first road width resolution along at least one axis; and
>
> generating a remnant path in the void region for filling at least [part] of a cavity corresponding to the defined void region with a second deposition road based on deposition rates that are configured to vary based on the dimensions of the void region.

156.    For example, BambuLab makes, uses, sells and offers to sell various extrusion based layered deposition systems (i.e., 3D printers), including the X1C, X1E, P1S, P1P, A1, and A1 mini, which are used for printing three-dimensional parts.  A 3D model of the 3D object to be printed is loaded into Bambu Studio and sliced to generate a .3mf file, which is the file format used

for the printer to be able to print the model.  The .3mf file contains instructions for executing build paths (e.g., "roads," "walls," etc.) during the printing of the object.  These instructions are provided to a BambuLab 3D printer and executed by the printer to, for example, generate void regions formed using walls of one width that that are filled in with remnant paths of another width.  For example, the Bambu Lab Wiki describes the concept of wall distribution count as a parameter for adjusting a number of and width of walls.  For example, widths of a wall are modified to fill a void formed between other walls.  BambuLab thus directly infringed and continues to directly infringe each limitation of at least Claim 15 of the '357 Patent by using in the United States, without authorization the Accused '357 Products. *See* Attached Exhibit 8 (claim charts for '357 Patent).

157.    As another example, on information and belief, Shenzhen Tuozhu Technology Co. Ltd. has authorized Bambulab USA, Inc. to sell the accused products in the United States and import the accused products into the United States. On information and belief, Bambulab USA, Inc. sells the accused products in the United States and imports the accused products into the United States.

158.    To the extent Counter-Defendants do not perform each and every limitation of the claims of the '357 Patent, Counter-Defendants jointly infringe those claims.  In particular, BambuLab directs or controls its users of the Accused '357 Products to perform one or more limitations of the claims nationwide through its own websites, applications, and manuals, and expects and intends that the Accused '357 Products will be so used.  For example, Counter-Defendants require customers and users to use the accused products through the applications Counter-Defendants produce and distribute for use.  Counter-Defendants further require users of the accused products to agree to extensive terms and conditions.  Finally, Counter-Defendants'

customers realize a tangible benefit by using Counter-Defendants' technology to print and manufacture tangible items.

159.    Counter-Defendants also indirectly infringe at least Claim 15 of the '357 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by third parties, including users, partners, affiliates, subsidiaries, resellers, distributors and service providers, in the United States with knowledge and specific intent that its efforts would result in the direct infringement of the '357 Patent.  For example, Counter-Defendants actively induce infringement of the '357 Patent by designing, manufacturing, selling, or distributing the Accused '357 Products and then training its customers and users on the use of those products and the accompanying applications, including through the creation and dissemination of supporting materials, maintenance guides, troubleshooting guides, software (including Bambu Studio and Bambu Handy), instructions, product manuals, and technical information. *See* https://wiki.bambulab.com/en/home.  As another example, Counter-Defendants actively induce infringement of the '357 Patent by instructing, encouraging, or requiring their subsidiaries and affiliates in the United States to use, sell, offer for sale in the United States, and importing into the United States, without authorization, the accused products that practice various claims of the '357 Patent, such as any BambuLab printer that is used in combination with the corresponding applications or controllers (e.g., the Bambu Studio and Bambu Handy, etc.).  As yet another example, Counter-Defendants actively induce infringement of the '357 Patent through the creation and dissemination of promotional and marketing materials and instructional videos.  *See* https://www.youtube.com/c/BambuLab.  Counter-Defendants' active inducement is done with the knowledge and the specific intent that its efforts would result in the direct infringement of the '357 Patent.

160.    At least the EDTX Defendants were put on notice of their direct and indirect infringement of the '357 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '357 Patent and knowledge of how Counter-Defendants induce third parties to infringe that patent at least as early as August 5, 2024.

161.    Counter-Defendants are also liable for contributory infringement of the '357 Patent under 35 U.S.C. § 271(c) by selling or offering for sale the Accused '357 Products and/or other components e.g., filament, automatic material system, build plates, etc.) in the United States and importing the Accused '357 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) in the United States with knowledge that they are especially designed or adapted to operate in a manner that infringes the '357 Patent and are not a staple article or commodity of commerce suitable for substantially non-infringing use.  Counter-Defendants contribute to infringement of the '357 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused '357 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) to third parties.

162.    The EDTX Defendants also have had knowledge of infringement of the '357 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '357 Patent and knowledge of how Counter-Defendants contribute to third parties' infringement of that patent at least as early as August 5, 2024.

163.    Counter-Defendants' infringement of the '357 Patent has been and continues to be willful.  At least as early as August 5, 2024, Counter-Defendants were notified of their infringing acts and deliberately continued to infringe the '357 Patent despite knowing of the existence of the patent and how Counter-Defendants infringe.  Further, Counter-Defendants have deliberately

continued to encourage others' infringement of the '357 Patent, including by continuing to disseminate their marketing and technical materials to customers.

164.    Counter-Defendants' acts of infringement have injured and damaged Stratasys and will continue to injure and damage Stratasys.  Stratasys is therefore entitled to recover from Counter-Defendants the damages it has sustained as a result of Counter-Defendants' wrongful and continued acts in an amount to be proven at trial.

165.    Counter-Defendants' infringement has damaged and will continue to damage Stratasys irreparably, and Stratasys has no adequate remedy at law for its injuries.  In addition to actual damages, Stratasys is entitled to a permanent injunction enjoining Counter-Defendants from infringing the '357 Patent.

166.    Stratasys is entitled to all damages to which it otherwise is entitled because it has complied with 35 U.S.C. § 287 by marking its patent-practicing products with the number of the '357 Patent.

### COUNT IX – INFRINGEMENT OF U.S. PATENT NO. 9,592,660

167.    Stratasys repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

168.    On March 14, 2017, the United States Patent Office (USPTO) duly and lawfully issued United States Patent No. 9,592,660, entitled "Heated Build Platform And System For Three-Dimensional Printing Methods."  By assignment, duly recorded with the USPTO, Stratasys owns all substantial rights to the '660 Patent, including the right to sue and recover damages for all infringement.

169.    The '660 Patent claims priority to U.S. Patent Application No. 14/574,237 filed on December 17, 2014.

170.    The priority date for the '660 Patent is December 17, 2014.

171.    The '660 Patent generally relates to a base for printing 3D objects using high temperature thermoplastics using additive manufacturing methods.

172.    BambuLab has directly infringed and continues to directly infringe the '660 Patent in violation of 35 U.S.C. § 271(a) by using, selling, offering for sale in the United States, and importing into the United States, without authorization, the accused products that practice various claims of the '660 Patent literally or under the doctrine of equivalents.  Those products include, for example, Bambu's X1C, X1E, and P1S, P1P, A1 and A1 mini printers.

173.    As a non-limiting example, the Accused '660 Products meet every element of at least Claims 1, 2, 4, 6, 7, 8, 10, 11, 12, and 14 of the '660 Patent literally or under the doctrine of equivalents.  For example, Claim 1 recites:

> 1.    A build apparatus for printing a 3D object of thermoplastics employing additive manufacturing methods, the apparatus comprising:
>
> a build platform with a temperature control unit configured to control heating of the build platform;
>
> a thermally conductive plate disposed adjacent to the build platform; and
>
> a polymer coating attached to a surface of the thermally conductive plate which is capable of (i) facilitating adhesion to the 3D object during printing and (ii) permitting removal of the 3D object once the 3D object has been formed and cooled without chemically or mechanically removing the polymer coating from 3D object and without damaging the polymer coating, the thermally conductive plate, or the 3D object, wherein the polymer coating is not a polymer tape.

174.    For example, BambuLab makes, uses, sells and offers to sell various additive manufacturing systems (i.e., 3D printers), including the X1C, X1E, P1S, P1P, A1, and A1 mini, which are used for printing three-dimensional parts using thermoplastic filaments.  The Bambu

printers have a heated build platform (i.e., heatbed).    In addition, Bambu sells thermally conductive build plates with their 3D printers, such as the Bambu Engineering Plate, Textured PEI Plate, and High Temperature Plate, that are placed on the heatbed for fabrication of the 3D part. These build plates are made by coating a polymer (e.g., polyetherimide) onto a steel sheet, which facilitates adhesion of the 3D part to the build plate. The 3D object is removable from the build plate without chemically or mechanically removing the polymer coating and without damaging the polymer coating, such as by flexing the build plate after the 3D object has cooled. BambuLab thus directly infringed and continues to directly infringe each limitation of at least Claim 1 of the '660 Patent by using, selling, offering for sale in the United States, and importing into the United States, without authorization the Accused '660 Products. *See* Attached Exhibit 9 (claim chart for '660 Patent).

175.    As another example, on information and belief, Shenzhen Tuozhu Technology Co. Ltd. has authorized Bambulab USA, Inc. to sell the accused products in the United States and import the accused products into the United States. On information and belief, Bambulab USA, Inc. sells the accused products in the United States and imports the accused products into the United States.

176.    To the extent Counter-Defendants do not perform each and every limitation of the claims of the '660 Patent, Counter-Defendants jointly infringe those claims. In particular, BambuLab directs or controls its users of the Accused '660 Products to perform one or more limitations of the claims nationwide through its own websites, applications, and manuals, and expects and intends that the Accused '660 Products will be so used. For example, Counter-Defendants require customers and users to use the accused products through the applications Counter-Defendants produce and distribute for use. Counter-Defendants further require users of

the accused products to agree to extensive terms and conditions.  Finally, Counter-Defendants'
customers realize a tangible benefit by using Counter-Defendants' technology to print and
manufacture tangible items.

177.    Counter-Defendants also indirectly infringe at least Claim 1 of the '660 Patent in
violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct
infringement by third parties, including users, partners, affiliates, subsidiaries, resellers,
distributors and service providers, in the United States with knowledge and specific intent that its
efforts would result in the direct infringement of the '660 Patent.  For example, Counter-
Defendants actively induce infringement of the '660 Patent by designing, manufacturing, selling,
or distributing the Accused '660 Products and then training its customers and users on the use of
those products and the accompanying applications, including through the creation and
dissemination of supporting materials, maintenance guides, troubleshooting guides, software
(including Bambu Studio and Bambu Handy), instructions, product manuals, and technical
information.  *See* https://wiki.bambulab.com/en/home.  As another example, Counter-Defendants
actively induce infringement of the '660 Patent by instructing, encouraging, or requiring their
subsidiaries and affiliates in the United States to use, sell, offer for sale in the United States, and
importing into the United States, without authorization, the accused products that practice various
claims of the '660 Patent, such as any BambuLab printer that is used in combination with the
corresponding applications or controllers (e.g., the Bambu Studio and Bambu Handy, etc.).  As yet
another example, Counter-Defendants actively induce infringement of the '660 Patent through the
creation and dissemination of promotional and marketing materials and instructional videos.  *See*
https://www.youtube.com/c/BambuLab.  Counter-Defendants' active inducement is done with the

knowledge and the specific intent that its efforts would result in the direct infringement of the '660 Patent.

178.    At least the EDTX Defendants were put on notice of their direct and indirect infringement of the '660 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '660 Patent and knowledge of how Counter-Defendants induce third parties to infringe that patent at least as early as August 5, 2024.

179.    Counter-Defendants are also liable for contributory infringement of the '660 Patent under 35 U.S.C. § 271(c) by selling or offering for sale the Accused '660 Products and/or other components e.g., filament, automatic material system, build plates, etc.) in the United States and importing the Accused '660 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) in the United States with knowledge that they are especially designed or adapted to operate in a manner that infringes the '660 Patent and are not a staple article or commodity of commerce suitable for substantially non-infringing use.   Counter-Defendants contribute to infringement of the '660 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused '660 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) to third parties.

180.    The EDTX Defendants also have had knowledge of infringement of the '660 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '660 Patent and knowledge of how Counter-Defendants contribute to third parties' infringement of that patent at least as early as August 5, 2024.

181.    Counter-Defendants' infringement of the '660 Patent has been and continues to be willful.  At least as early as August 5, 2024, Counter-Defendants were notified of their infringing

acts and deliberately continued to infringe the '660 Patent despite knowing of the existence of the patent and how Counter-Defendants infringe.  Further, Counter-Defendants have deliberately continued to encourage others' infringement of the '660 Patent, including by continuing to disseminate their marketing and technical materials to customers.

182.    Counter-Defendants' acts of infringement have injured and damaged Stratasys and will continue to injure and damage Stratasys.  Stratasys is therefore entitled to recover from Counter-Defendants the damages it has sustained as a result of Counter-Defendants' wrongful and continued acts in an amount to be proven at trial.

183.    Counter-Defendants' infringement has damaged and will continue to damage Stratasys irreparably, and Stratasys has no adequate remedy at law for its injuries.  In addition to actual damages, Stratasys is entitled to a permanent injunction enjoining Counter-Defendants from infringing the '660 Patent.

184.    Stratasys is entitled to all damages to which it otherwise is entitled because it has complied with 35 U.S.C. § 287 by marking its patent-practicing products with the number of the '660 Patent.

## **COUNT X – INFRINGEMENT OF U.S. PATENT NO. 11,886,774**

185.    Stratasys repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

186.    On January 30, 2024, the United States Patent Office (USPTO) duly and lawfully issued United States Patent No. 11,886,774, entitled "Detection And Use Of Printer Configuration Information."  By assignment, duly recorded with the USPTO, Stratasys owns all substantial rights to the '774 Patent, including the right to sue and recover damages for all infringement.

187.    The '774 Patent claims priority to U.S. Patent Application No. 14/587,548 filed on December 31, 2014.

188.    The priority date for the '774 Patent is December 31, 2014.

189.    The '774 Patent generally relates to methods for detection of hardware and software properties of a three-dimensional printer that are relevant to fabrication, which allows the selection and use of suitable models.

190.    BambuLab has directly infringed and continues to directly infringe the '774 Patent in violation of 35 U.S.C. § 271 (a) by using in the United States, without authorization, the accused products that practice various claims of the '774 Patent literally or under the doctrine of equivalents.  Those products include, for example, Bambu Studio.

191.    As a non-limiting example, the Accused '774 Products meet every element of at least Claims 1, 2, 3, 4, 5, 6, 8, 9, 10, 12, 13, and 19 of the '774 Patent literally or under the doctrine of equivalents.  For example, Claim 1 recites:

> 1.  A method comprising:
>
> receiving a request to fabricate an object from a three-dimensional model;
>
> determining a target printer to fabricate the object;
>
> querying the target printer for configuration information of the target printer relevant to creation of a printable model for fabrication of the object on the target printer;
>
> receiving, from the target printer, a dictionary of configuration information containing one or more properties from the target printer that affect fabrication capabilities of the target printer;
>
> creating a fabrication profile based on the one or more properties; and
>
> generating a machine-ready representation of the three-dimensional model executable by the target printer to fabricate the object.

192.    For example, BambuLab makes, uses, sells and offers to sell as well as distributes the Bambu Studio app, which receives requests to fabricate an object from a three-dimensional model and sends instructions to print the object to a particular BambuLab 3D printer.  Bambu Studio requests configuration information from a target Bambu printer.  This information requested of and received from the printer can include printer type, model, nozzle diameter, and filament properties.  For example, in the Bambu Studio software, under the "Prepare" tab, in the "Filament" section there is an icon to "Synchronize filament list from AMS."  This button queries the Bambu printer for the filament types currently in the printer.  When a user selects the synchronize filament button (located under the filament presets), the loaded filament type appears in Bambu Studio based on the provided filament information.  When the user selects one of the loaded filaments, the filament preset configuration is used to slice the model.  Filament parameters can also be set by the user based on the provided filament information.  Selecting "slice" in Bambu Studio creates a sliced model of the part (e.g., a machine ready representation) that is executable by the target printer to fabricate the object.  BambuLab thus directly infringed and continues to directly infringe each limitation of at least Claim 1 of the '774 Patent by using, selling, offering for sale in the United States, and importing into the United States, without authorization the Accused '774 Products. *See* Attached Exhibit 10 (claim chart for '774 Patent).

193.    As another example, on information and belief, Shenzhen Tuozhu Technology Co. Ltd. has authorized Bambulab USA, Inc. to sell the accused products in the United States and import the accused products into the United States. On information and belief, Bambulab USA, Inc. sells the accused products in the United States and imports the accused products into the United States.

194.    To the extent Counter-Defendants do not perform each and every limitation of the claims of the '774 Patent, Counter-Defendants jointly infringe those claims.  In particular, BambuLab directs or controls its users of the Accused '774 Products to perform one or more limitations of the claims nationwide through its own websites, applications, and manuals, and expects and intends that the Accused '774 Products will be so used.  For example, Counter-Defendants require customers and users to use the accused products through the applications Counter-Defendants produce and distribute for use.  Counter-Defendants further require users of the accused products to agree to extensive terms and conditions.  Finally, Counter-Defendants' customers realize a tangible benefit by using Counter-Defendants' technology to print and manufacture tangible items.

195.    Counter-Defendants also indirectly infringe at least Claim 1 of the '774 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by third parties, including users, partners, affiliates, subsidiaries, resellers, distributors and service providers, in the United States with knowledge and specific intent that its efforts would result in the direct infringement of the '774 Patent.  For example, Counter-Defendants actively induce infringement of the '774 Patent by designing, manufacturing, selling, or distributing the Accused '774 Products and then training its customers and users on the use of those products and the accompanying applications, including through the creation and dissemination of supporting materials, maintenance guides, troubleshooting guides, software (including Bambu Studio and Bambu Handy), instructions, product manuals, and technical information.  *See* https://wiki.bambulab.com/en/home.  As another example, Counter-Defendants actively induce infringement of the '774 Patent by instructing, encouraging, or requiring their subsidiaries and affiliates in the United States to use, sell, offer for sale in the United States, and

importing into the United States, without authorization, the accused products that practice various claims of the '774 Patent, such as any BambuLab printer that is used in combination with the corresponding applications or controllers (e.g., the Bambu Studio and Bambu Handy, etc.).  As yet another example, Counter-Defendants actively induce infringement of the '774 Patent through the creation and dissemination of promotional and marketing materials and instructional videos.  *See* https://www.youtube.com/c/BambuLab.  Counter-Defendants' active inducement is done with the knowledge and the specific intent that its efforts would result in the direct infringement of the '774 Patent.

196.   At least the EDTX Defendants were put on notice of their direct and indirect infringement of the '774 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '774 Patent and knowledge of how Counter-Defendants induce third parties to infringe that patent at least as early as August 5, 2024.

197.   Counter-Defendants are also liable for contributory infringement of the '774 Patent under 35 U.S.C. § 271(c) by selling or offering for sale the Accused '774 Products and/or other components e.g., filament, automatic material system, build plates, etc.) in the United States and importing the Accused '774 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) in the United States with knowledge that they are especially designed or adapted to operate in a manner that infringes the '774 Patent and are not a staple article or commodity of commerce suitable for substantially non-infringing use.  Counter-Defendants contribute to infringement of the '774 Patent by, *inter alia*, promotion, and/or sales of the infringing Accused '774 Products and/or other components (e.g., filament, automatic material system, build plates, etc.) to third parties.

198.    The EDTX Defendants also have had knowledge of infringement of the '774 Patent at least as early as August 5, 2024 through a notice letter sent to the EDTX Defendants.  Counter-Defendants have knowledge of the '774 Patent and knowledge of how Counter-Defendants contribute to third parties' infringement of that patent at least as early as August 5, 2024.

199.    Counter-Defendants' infringement of the '774 Patent has been and continues to be willful.  At least as early as August 5, 2024, Counter-Defendants were notified of their infringing acts and deliberately continued to infringe the '774 Patent despite knowing of the existence of the patent and how Counter-Defendants infringe.  Further, Counter-Defendants have deliberately continued to encourage others' infringement of the '774 Patent, including by continuing to disseminate their marketing and technical materials to customers.

200.    Counter-Defendants' acts of infringement have injured and damaged Stratasys and will continue to injure and damage Stratasys.  Stratasys is therefore entitled to recover from Counter-Defendants the damages it has sustained as a result of Counter-Defendants' wrongful and continued acts in an amount to be proven at trial.

201.    Counter-Defendants' infringement has damaged and will continue to damage Stratasys irreparably, and Stratasys has no adequate remedy at law for its injuries.  In addition to actual damages, Stratasys is entitled to a permanent injunction enjoining Counter-Defendants from infringing the '774 Patent.

202.    Stratasys is entitled to all damages to which it otherwise is entitled because it has complied with 35 U.S.C. § 287 by marking its patent-practicing products with the number of the '774 Patent.

## **JURY DEMAND**

203.    Counter-Plaintiff Stratasys hereby demands a trial by jury.

## **PRAYER**

WHEREFORE, Counter-Plaintiff prays for judgment in their favor on all counts in the Complaint, Answer, and Counterclaims and requests relief as follows:

A.  Declaring that Counter-Defendants have infringed the Asserted Patents, directly and indirectly, literally and/or under the doctrine of equivalents.

B.  Awarding Stratasys damages arising out of this infringement of the Asserted Patents, including enhanced damages pursuant to 35 U.S.C. § 284.

C.  Permanently enjoining Counter-Defendants and their respective officers, agents, servants, employees, and those acting in privity with them, from further infringement, including induced infringement and contributory infringement, of the Asserted Patents.

D.  Awarding attorneys' fees to Stratasys pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

E.  Awarding to Stratasys such other costs and further relief as the Court deems just and proper.

Dated: February 18, 2025

Respectfully submitted,

By: */s/ Kevin J. Meek*

Kevin J. Meek
Texas Bar No. 13899600
Brian Oaks
Texas Bar No. 24007767
Syed K. Fareed
Texas Bar No. 24065216
Aashish Kapadia
Texas Bar No. 24097917
Christian Tatum (*pro hac vice* pending)
Texas State Bar No. 24125429
**MCDERMOTT WILL & EMERY LLP**
300 Colorado Street, Suite 2200
Austin, Texas 78701-4078
Telephone: (512) 726-2600
Facsimile: (512) 532-0002
kmeek@mwe.com
boaks@mwe.com
sfareed@mwe.com
akapadia@mwe.com
ctatum@mwe.com

Deron R. Dacus
Texas Bar No. 00790553
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
903-705-1117 (phone)
903-705-1117 (fax)
*ddacus@dacusfirm.com*

Andrea L.  Fair
Texas Bar No. 24078488
**MILLER FAIR HENRY, PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
*andrea@millerfairhenry.com*

***ATTORNEYS FOR DEFENDANT
STRATASYS, INC.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2025, the foregoing was filed electronically and served on all counsel of record.

*/s/ Kevin J. Meek*
Kevin J. Meek